WILLIAM PENNOCK, *et al.*, v. MARY THORP MONROE.

*Error from Franklin County.*

1. RECORD: JUDGES' MINUTES ARE NOT.—The minutes made by the judge of a court upon his trial docket constitute no part of the record of a case.
2. SAC AND FOX INDIAN DEEDS.—Where an individual not a member of the tribe attempted to purchase of a half-breed Sac and Fox Indian, lands which were allotted to such Indian under the provisions of article ten of the treaty made October 1st, 1859, with the Sac and Fox tribe, [15 *U. S. Stat.*, 467]: *Held*, that a deed made in pursuance of such attempted purchase was a nullity and conveyed no title.[*]
3. ID: SOLD ALLOTMENTS.—*Held*, that provisions of article seventeen of the treaty made February 17th, 1867, with such tribe [15 *U. S. Stat. at Large*, 498] recognizing valid sales theretofore made, in no wise affects, or refers to, or recognizes such void conveyances.

The petition in this case in the court below, substantially alleged: that plaintiff is a half-breed of the Sac and Fox tribe of Indians as mentioned in the tenth (10th) article of the treaty between the United States and the Sac and Fox tribe of Indians, as ratified by the Senate of the United States, July 9th, A. D. 1869. That as such half-breed, she received by patent from the United States, subject to the conditions in said tenth article mentioned, the following described lands, situated in said Franklin county, to-wit: The east half of section twelve (12), township seventeen (17), range seventeen (17), containing three hundred and seventy acres. That on the 16th day of February, A. D. 1865, she was a minor under the age of eighteen years; that her maiden name, and the name under which she received said patent of land was Mary Thorp, but that she is now married to one Thomas Monroe; that at the time last mentioned, said

---

[*] INDIANS: SAC AND FOX.—The tenth article of the treaty of October 1st, 1859, [15 U. S. Stat., 467,] prohibits those Indians from selling the lands mentioned therein to any one not a member of the tribe.

William Pennock, defendant herein, who was not then, nor is he now, a member of said tribe of Sac and Fox Indians, continuing to deprive the plaintiff of her said land, induced her to sign a deed to said Pennock for said land, although he well knew said land was inalienable by the plaintiff, while the plaintiff was so grossly intoxicated and otherwise unduly influenced that she was incapable of transacting business; said intoxication and other undue influence having been caused by said Pennock for the purpose of rendering said plaintiff incapable of transacting business, and for the purpose of defrauding her; that said deed was procured from the plaintiff without consideration therefor; by reason of the premises said deed is wholly null and void. The plaintiff further says that the defendants, C. B. Parkinson, Jonathan Parkinson, and William Fleak, claim to have an interest in said land derived from said Pennock, but whether by writing or not, plaintiff cannot state; that said defendants, Parkinson and Fleak, are in possession of the lands aforesaid, and are about to cut and carry away therefrom a large amount of timber.

Plaintiff prays that said deed, so procured, and which is recorded in book "F" of deeds, of said county, at page 593, may be decreed to be null and void; that the plaintiff's title may be freed from the cloud cast upon it by said deed, and that said title of all the said defendants may be declared null and void, and that said defendants be enjoined from cutting and stripping said land of timber.

To this petition a demurrer was filed, alleging that on the face of the petition the court has no jurisdiction of the person of plaintiff, or the subject of the action; that the plaintiff has not legal capacity to sue; that several causes of action are improperly joined and not num-

bered; that the court has no power to grant the relief demanded, and that the petition does not state facts sufficient to constitute a cause of action.

The following, extracted from the transcript sent to the Supreme Court, is all that appears therein relative to the disposal of the demurrer: "And afterwards, on the 10th day of October, A. D. 1868, at the fall term of said court, the said cause come on to be heard upon the demurrer filed in said action, and the following appears of record in the judges trial docket, to-wit:

No. 401.]

"Mary Thorp Monroe,            ⎫
                    v.                    ⎬
William Pennock, *et al.*       ⎭

"October 10th, demurrer of defendants overruled and exceptions; and motion of defendants overruled and exceptions; case continued on affidavit of defendants."

Afterwards an answer was filed in the case which was replied to. It was admitted on the trial that the defendant below was a white man and not a member of the tribe. The case was tried by a jury who found a *special* verdict that "the plaintiff was seventeen years old February 6th, 1865; that the plaintiff was a half-breed Sac and Fox Indian, as mentioned in section ten, treaty of July 9, 1860; that she received the land in question as such Indian, as provided in said treaty; that the land was worth at that date three dollars per acre; that the consideration agreed to be paid wás $900; that the same has been paid in full; that there was no undue influence used by the defendant to procure the conveyance; that the plaintiff was not intoxicatèd at the time of making the same; but was, at the time of making the contract therefor, which she afterwards confirmed, so far as a minor could; that the plaintiff has disapproved the con-

tract within a reasonable time after attaining her majority, but has not offered to restore the money received." The court on this verdict found for the plaintiff, entered judgment in her favor and set aside her conveyance to defendants at their costs, to which the defendants excepted. To reverse this judgment the action is brought to this court.

*C. B. Mason* and *H. P. Welsh*, for plaintiff in error.

*Thacher & Banks*, for defendant in error.

*For defendant*, it was submitted:

1. The latter clause of section ten of treaty with Sac and Foxes, of October 1st, 1859, [15 *U. S. Stat. at Large*, 467,] provides: "The lands granted by this article shall remain inalienable, except to the United States, or to members of the tribe."

The construction turns on the use and significance of the word "inalienable."

Webster defines this word: "Incapable of being put off, alienated, or transferred to another; unalienable." The word is composed of two words, "in," meaning "not," and "alienable," signifying, "capable of being alienated, sold, or transferred to another; as land is alienable according to the laws of the State."

This land, then, was absolutely forbidden to be sold under any circumstances, save to the United States or members of the tribe. Any attempt to transfer it was simply void.

This court has twice passed on this question. *Stevens v. Smith*, 2 *Kas.*, 243; *Bluejacket v. Commissioners Shawnee County*, 3 *Kas.*, 299.

2. The tenth section of the treaty of 1859 authorized a sale to the United States, or members of the tribe.

The seventeenth section of the treaty of 1867 provides that patents shall issue to the purchasers. This section certainly could not be construed to legalize a sale declared by a former treaty to be void, especially as the former treaty contained provisions on which this provision of section seventeen could operate.

It had been the stated policy of the government to exercise a guardianship and control over the estates of those Indians to whom it granted lands in severalty here in Kansas. It continued this guardianship over these Indians by section eighteen of the treaty of 1867. The right to sell to every person is given, but it is still under the care of the secretary of the interior. That the treaty could not make good a void conveyance, hardly needs argument.

In Stevens v. Smith, on a point of similar character, the court say, page 250 : "But this removal of the restrictions can by no means be construed to make a void conveyance valid."

3. Section seventeen, treaty of 1867, is an attempt to create a tribunal for determining land suits and thus to vest judicial power in the secretary of the interior. This cannot be done in a treaty. Courts can only be created by congress. [ *Const. U. S., Art.* 3, § 1.] Besides, the proceeding contemplated in that section are without the forms or " due process of law "—without a jury or a right of appeal, or even notice to the parties in interest, and without rules as to what constitutes "full proof" or its nature.

4. Indian treaties take effect upon individual rights from the date of ratification. [ *U. S. v. Arredouds,* 6 *Pet.,* 749, *affirmed in U. S. v. Sibbald,* 10 *Pet.,* 323.] The treaty of 1867 was not ratified until September 2, 1868. This action was pending at that date. Section seventeen,

therefore, could not affect the rights of the parties thereto.
17 *Ohio*, 125.

*By the Court,* SAFFORD, J,

As to the second assignment of error in this case,
that the court below erred in overruling the demurrer to
the petition, we do not feel authorized or required to
examine, and for the reason that the record does not
properly show what was, or was not, the action of the
court in the premises.

It is true that the record contains a copy of

RECORD : THE
Judges Minutes the minutes made by the Judge, before whom
the case was tried, upon his trial docket, and under the
title thereof. But this is all that appears. Such minutes
are no part of the record in any case, and might be
omitted entirely without affecting in any manner the
validity of any proceedings had or determined therein
by the court. They are valuable, however, as furnishing
data, whereby the clerk is guided to some extent in
making up his journal entries, if for any reason he
should fail to make such entries at the precise time when
proceedings are had. They are also valuable as ena-
bling the court to pass upon the correctness of journal
entries, in the particulars to which they relate, when
such entries are presented for approval. They might
also in a case like the one at bar, where there was no
journal entry of an order of the court, furnish data from
which an entry *"nunc pro tunc"* might be ordered to be
made, in order to cure the defective record. But they
cannot be made to stand for what ought to appear in the
journal of the proceedings of the court in the manner
attempted in this instance. We shall therefore hold that

such minutes are unavailable for any purpose, as affecting the case now here before us.

PETITION: ITS Sufficiency. There is, however, one question which was attempted to be raised by the demurrer which is otherwise presented in the case, and that is, did the petition as filed below, state facts sufficient to constitute a cause of action ? We are content to make a simple decision of this point in the affirmative, and without giving our reasons, or discussing the question in detail. We come now to the examination of another question which arises in the case, and to which counsel on either side have more particularly directed attention in their briefs. It is as to the power of the plaintiff below to make and execute the deed described in the petition, and by which she purported to convey the lands mentioned to William Pennock, one of the defendants below, on the 6th day of February, 1865. The case shows that the said plaintiff was a half breed Sac and Fox Indian, and that she held the lands in question under the tenth article of the treaty with the Sac and Fox tribe of Indians, made October 1st, 1859. It is also admitted that Pennock was a white man, and not a member of said tribe.

INDIANS: SAC AND Fox: Deeds by. Now by referring to the said tenth article of the said treaty above named, which was in full force on the 6th day of February, 1865, the date of the alleged sale, it will be seen that it contains a provision as follows, to wit: "The lands granted by this article shall remain *inalienable*, except to the United States, or to members of the tribe." We are unable to see how this is to be regarded in any other light, than as amounting to a complete prohibition upon the right of the grantor in this instance, to sell her lands to any one outside of the tribe as was the defendant below, and as a consequence we think that such attempted sale was a

nullity. But it is claimed for the grantee in such sale, that by construing said article ten, together with article seventeen of a treaty máde February 17, 1867, with the said Sac and Fox tribe, the power or right to make it, is impliedly given. By what process of reasoning such a conclusion is to be reached, we are not informed, nor do we feel inclined to attempt its discovery. It is true ·that the treaty last named recognizes the fact that valid sales of the half breed Sac and Fox lands may have taken place prior to its negotiation, as for example, by and between members of the tribe; but surely there is nothing in such treaty which goes farther than this, or that can in any way be tortured into a recognition of a sale of such lands, which was absolutely prohibited and therefore void, under previously existing treaty provisions. This point seems too plain to require argument, as indeed does the whole question of the right of the plaintiff below to sell as it was sought to have her do, when examined in the light of the treaty stipulations referred to. The court below declared against such right, and we think the judgment correct. What has already been advanced is decisive of this case, and therefore we shall not allude to any other question which may have been suggested by counsel. Judgment below affirmed.

KINGMAN, C. J. concurring.

VALENTINE, J. not sitting in the case.