SAMUEL ERVIN, *et al.*, v. WILLIAM MORRIS.

1. NEW TRIAL; *Practice.* Where the case-made recites that a motion for a new trial was made and overruled, but fails to give a copy of such notice or show upon what ground it was based, *held,* that this court cannot say whether the district court erred or not in overruling the motion, and that therefore all questions arising upon the trial alone, are excluded from consideration of this court.

2. INDEPENDENT TITLE, *Purchased by Grantor; No Estoppel.* Where A., having a perfect title to a tract of land, executes a warranty deed therefor with full covenants, he is not thereby estopped from purchasing at sheriff's sale or tax sale any independent title arising subsequently to such conveyance, and holding the same for his own benefit.

3. DECREE, *How far Binding.* A decree binds the parties and those who are privies in estate, but does not conclude third parties or any who are strangers to the record and deriving no title from any party thereto.

4. NOTE AND MORTGAGE, *Valid.* A., holding the legal title to and having possession of real estate, and being in fact the holder of a full equitable mortgage interest therein, executed a deed to such real estate to B., and gave him possession, receiving in consideration therefor certain notes and a mortgage on the land conveyed: *Held,* That there was consideration for such notes and mortgage, and that A. or his assignee or indorsee was entitled to a decree for the sale and foreclosure of the mortgaged property.

*Error from Nemaha District Court.*

ACTION brought by *Morris* against *Ervin* and wife and two others, upon certain promissory notes and a mortgage. Judg-

ment for the plaintiff, at the April Term, 1881, of the district court. The defendants bring the case here. The opinion states the facts.

*Joseph Sharpe*, for plaintiffs in error.
*Simon Conwell*, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: This was an action brought in the district court of Nemaha county, to foreclose a mortgage. The action was sustained in that court and a decree of foreclosure entered, to review which decree this proceeding in error has been brought. The case was tried by the court without a jury, special findings of fact and conclusions of law made, and judgment and decree entered thereon. It appears from the statement in the case-made, that a motion for a new trial was filed and overruled, but the motion itself is not preserved in the case; we are not advised as to its contents, and therefore cannot say whether the court erred in overruling such motion, or that any question occurring upon the trial has been preserved for review in this court.

We can lay the testimony, or so much of it as appears in the record, one side, and are limited in our inquiry to the pleadings, findings and judgment. (*Parker v. Remington Sewing Machine Co.*, 24 Kas. 31.) By those findings these facts appear : In 1859, the defendant, Elizabeth Brown, was the owner in fee simple of the land covered by the mortgage, to wit, the northwest 15, 4, 14 ; in 1859, she and her husband deeded to defendant, John Scylers, forty acres of this tract. Said Scylers failing to pay subsequent taxes, a tax deed was issued to Charles G. Scrafford, which deed was in due form and duly recorded. Thereafter, in 1876, upon a judgment against said Charles G. Scrafford, the forty acres were sold upon execution and purchased by Joseph Brown, the husband of said Elizabeth Brown. Everything in all these proceedings was regular. In 1881 said John Scylers quitclaimed the forty acres to Joseph Sharpe, one of the plaintiffs in

error. In 1878 said Joseph Brown was arrested on a criminal charge and required to give bail in the sum of $1,000. Adam Swerdsfeger signed as security for him and thereby obtained his discharge from arrest, and in order to protect said Swerdsfeger, Elizabeth Brown and Joseph Brown her husband, on January 14, 1878, executed a deed to the entire quarter-section to the said Swerdsfeger, and said Swerdsfeger gave back to them a written instrument of defeasance, by which he stipulated that if said Joseph Brown should appear for trial and thus relieve him, Swerdsfeger, from liability on his bond, the deed to said Swerdsfeger should be considered null and void; otherwise it was to remain in full force and effect, and the title to the property was to be and remain in said Swerdsfeger. Brown failed to appear at the time of trial, his recognizance was forfeited, and upon suit judgment was rendered against Swerdsfeger for the amount of the recognizance. (21 Kas. 475.) The amount of such recognizance was paid by Swerdsfeger after such judgment. Elizabeth Brown followed her husband away from the state. The quarter-section remained vacant, and on May 1st, 1879, Swerdsfeger and wife executed a deed to Samuel Ervin, and put him in possession; and in payment therefor, Ervin and his wife executed the notes and mortgage sued on in this case. Before the maturity of any note, Swerdsfeger indorsed them to one John Achton, and thereafter said Achton indorsed them to the plaintiff below, defendant in error here. In 1878, March 26th, said Elizabeth Brown with the consent of her husband executed to defendant, Joseph Sharpe, a deed to an undivided half of said land. Such deed was taken by said Sharpe with full knowledge of the conveyance to Adam Swerdsfeger and the consideration therefor. After the conveyance by Swerdsfeger to Samuel Ervin, said Ervin brought an action in the district court against Elizabeth Brown and her husband, Joseph Sharpe and wife, and John Scylers, to quiet his title to such premises. Adam Swerdsfeger was named in the petition as one of the parties defendant, but was not served by summons and

was not in fact a party to that litigation. Upon the trial of such action, Ervin obtained a decree quieting his title but giving to certain of the defendants a right of redemption within a given time. Thereafter he quitclaimed to Joseph Sharpe, one of the defendants in that and also in this action. Upon the trial of the case at bar and upon the facts as found by the district court, it rendered a judgment on the notes in favor of defendant in error and against Samuel Ervin, and entered a decree of foreclosure on the mortgaged premises. Do the facts as thus found and stated show any error in this decree? Manifestly not. So far as the sale to John Scylers is concerned, the findings are, that the tax deed to Charles G. Scrafford and the proceedings in the suit against him, and the sale, were all legal and regular. The effect of such proceedings was, to pass to Joseph Brown the full title to said 40 acres. The fact that in 1859 he joined with his wife in a warranty deed for said land did not prevent him from thereafter purchasing at sheriff's or tax sale the land so conveyed by him. The doctrine of a warranty title and estoppel therefrom has no reference to a title arising and perfected after one conveyance of a good title. At the time of the deed to Scylers, Mrs. Brown had a good title, which title she and her husband conveyed to Scylers; yet by such conveyance she was not debarred, although it contained full warranties from thereafter purchasing at either sheriff's or tax sale all title that Scylers had. Her warranty was simply as to her title at the time of her deed, and did not guarantee Scylers from thereafter losing title by any failure or fault of his own. Whenever he defaulted in taxes, she or her husband or any person not chargeable with the duty of paying those taxes, could purchase the land at tax sale and perfect a title. Scrafford did that, and obtained title, and thereafter, upon execution against him, his title was sold, and passed to Joseph Brown. In 1878, at the time of the conveyance to Swerdsfeger, Mr. and Mrs. Brown had the full title to the entire quarter-section. By such conveyance Swerdsfeger took the legal title, though in fact he became only an equitable

mortgagee. By the failure of Brown to appear for trial, the forfeiture and payment of the recognizance, Swerdsfeger's rights became perfect. He then held the legal title, which was security to him for the amount of money he had paid. Upon that state of affairs he deeded the land to Ervin, taking as payment therefor the notes and mortgage sued on. Those notes he transferred to the defendant in error, plaintiff below. If there was any consideration for those notes and Ervin had no legal defense as against Swerdsfeger, it is to him a matter entirely immaterial whether Swerdsfeger got full value for the notes or not. He might have given them away without receiving any consideration, and still it was a matter of which Ervin could not complain. It is enough that now Morris is the legal owner and holder, and unless Ervin has some defense as against Swerdsfeger, he has none against Morris. He had no defense as against Swerdsfeger, because at the time he purchased from Swerdsfeger the latter had the legal title, had the possession and a large equitable interest; all that, he purchased and obtained, for that he gave his notes and mortgage: There was consideration, and ample consideration, to sustain his purchase, and it does not lie in his mouth to take whatever title Swerdsfeger had, receive possession, and then repudiate his promise to pay. So far as the proceedings in that case commenced by Ervin against Brown and others are concerned, it is enough to say that neither Swerdsfeger, Achton nor Morris was in fact a party, or bound by its decree. As to them it was simply *res inter alios acta*. A decree is as a rule good as to the parties and all privies in estate, but valueless as to third parties and strangers to the record.

These are all the questions in the case, and no error appearing, the judgment of the district court is affirmed.

All the Justices concurring.