Kinkel v. Chase.

---

No. 21,220.

A. R. KINKEL, *Appellant,* v. FRED F. CHASE, *Appellee,* et al.

SYLLABUS BY THE COURT.

1. JUDGMENT RENDERED—*No Journal Entry Recorded—Judgment Valid.* The omission of the clerk to perform the ministerial duty of recording a judgment does not destroy the judgment, nor does its validity or effect remain in abeyance until it is formally entered on the journal.

2. JUDGMENT—*Creditor's Bill—Only the Parties Affected Thereby.* A judgment against the defendant in a suit in the nature of a creditor's bill will not inure to the benefit of another creditor of defendant, who is neither party nor privy to the judgment.

3. JUDGMENT—*Contribution Between Judgment Debtors—Subrogation.* A surety who satisfies a judgment against his principal, and files with the clerk notice of his intention to claim repayment under section 474

of the code of civil procedure, has all the rights and remedies of an owner of the judgment for the purpose of enforcing repayment.

4. CREDITOR'S BILL—*Demurrer to Evidence—Erroneously Sustained.* In a suit in the nature of a creditor's bill, *held,* that it was error for the court to sustain a demurrer to the evidence.

Appeal from Morris district court; ROSWELL L. KING, judge. Opinion filed January 12, 1918. Reversed.

*Edwin Anderson,* of Council Grove, and *Frans E. Lindquist,* of Kansas City, Mo., for the appellant.

*M. B. Nicholson,* and *W. J. Pirtle,* both of Council Grove, for the appellees.

The opinion of the court was delivered by

PORTER, J.: This is a suit in the nature of a creditor's bill. The court gave judgment in favor of the defendant, and the plaintiff appeals.

On the 23d of June, 1915, a judgment was rendered in the district court of Morris county in an action on a promissory note against A. R. Kinkel, the plaintiff in the present suit, W. J. Kinkel, and Dyson Jackson, and the court made an order that if the judgment was paid by either of the Kinkels they should be subrogated to the rights of the plaintiff in the action. Later, on July 17, A. R. Kinkel satisfied the judgment as to himself and W. J. Kinkel by paying the sum of $383.50, and duly filed with the clerk of the court a notice claiming contribution and the right of subrogation under section 474 of the civil code. (Gen. Stat. 1915, § 7378.) On June 23, 1915, the same day the judgment was rendered against the Kinkels and Dyson Jackson, a judgment was rendered in the same court in another action in the nature of a creditor's bill brought by J. B. Lamb and S. H. Crowley against Dyson Jackson, Annie Jackson, his wife, and Samuel M. Jackson, his son, and other defendants. The petition in that case alleged that Dyson Jackson was the owner of 420 acres of land and other real estate in Morris county, and had taken the title in the name of his wife and his son with the intent to hinder and delay his creditors. The judgment sustained all the allegations of the petition, and the court held that Dyson Jackson was the owner of the land and decreed that the title thereto be vested in him

for the use and benefit of his creditors, and that his wife and son be devested of any right or interest under the conveyance to them. No journal entry of this judgment was entered by the clerk of the court, but the entries on the judge's trial docket of that date showed the nature of the judgment rendered.

On the 26th of October, 1915, Dyson Jackson sold the land to Fred F. Chase. The warranty deed recited a consideration of $25,000, and it was executed not only by Dyson Jackson but by his wife and son, in whom the legal title had rested prior to the rendition of the judgment in the suit brought by Lamb and Crowley.

The petition in the present case recited the foregoing facts and alleged that the judgment which A. R. Kinkel had satisfied became a lien on the 420 acres of land, not only by virtue of the judgment rendered in the case of Lamb and Crowley v. Dyson Jackson et al., but for the further reason that the land in fact belonged to Dyson Jackson at that time; and further, that Fred F. Chase, defendant in this case, purchased the real estate with full knowledge that the judgment for $383.50 had been rendered and that it was a valid and binding lien thereon. Incidental to the suit, Kinkel asked the court to "make a *nunc pro tunc* judgment" in the old case of Lamb and Crowley v. Jackson et al., as of June 23, 1915, devesting Samuel M. Jackson and Annie Jackson of all their title to the real estate and vesting the title thereto in Dyson Jackson for the use of his creditors.

The defendant Chase filed an answer denying that plaintiff Kinkel ever had any lien on the land adverse to his and alleging that he purchased the land and gave full value without notice, actual or constructive, of any lien or claimed lien on behalf of Kinkel.

On the trial the records, papers, and files in the former suits and the various conveyances affecting the title were introduced in evidence. Plaintiffs also offered oral evidence to show that parties representing defendant Chase before the conveyance to him was made came to Kinkel and offered him $60 for a release of his judgment, and told him that if he refused to take that they would recommend to Mr. Chase that he close the deal anyway. There was evidence also that the

liens of the other creditors in the former suit were satisfied out of the purchase money paid by Chase. The trial court entered a *nunc pro tunc* judgment in the case of Lamb and Crowley v. Jackson et al., as of June 23, 1915, setting forth in full the terms of the judgment actually rendered on that date. The defendant demurred to the plaintiff's evidence, and the court sustained the demurrer.

In a written opinion, the trial court stated the reasons for sustaining the demurrer, which were that inasmuch as the plaintiffs in the first creditors' bill had not brought their suit for the use and benefit of other creditors that might desire to come in and set up claims, the judgment declaring the conveyance of the real estate to the wife and son of Dyson Jackson fraudulent and void was solely for the benefit of the plaintiffs and other parties to that suit, and that since Kinkel was not a party he could derive no benefit from the judgment. In stating the grounds for sustaining the demurrer the court laid considerable stress on the fact that there was no journal entry of the judgment on record in the Lamb and Crowley case, and held that for this reason Chase, when he desired to purchase the land, would find nothing of record indicating that Kinkel had any interest in or lien thereon, and that therefore he must be held to have purchased without notice of any such lien or claim on the part of Kinkel, and the court further held that there were no judgments which were liens against the land at the time Chase purchased, except those pleaded in the first creditors' suit.

So far as the judgment sustaining the demurrer rests on the failure to have a journal entry recorded in the first creditors' bill brought by Lamb and Crowley, the court was in error. The judgment was rendered on the 23d day of June, 1915, and it was no less a judgment because the clerk failed to prepare and file a journal entry. "The omission to enter it does not destroy it, nor does its vitality remain in abeyance until it is put upon the record." (1 Black on Judgments, § 106.) It was therefore not necessary for the plaintiff in the present case to obtain from the court an order for a *nunc pro tunc* judgment. The ruling of the court making what is called such a judgment amounts to nothing more, however, than the approval of a journal entry reciting the details of the decree.

If Kinkel could predicate any rights by virtue of the judgment in the first creditors' suit, he is not in any sense deprived of that right because of the failure of the clerk to perform a ministerial duty.    If Chase, when he purchased the land, desired to know the nature and terms of the judgment that had been rendered against Dyson Jackson in the first case, and could find no journal entry of record, he was bound to examine the pleadings in the case, and finding a judgment in favor of plaintiff against the defendant, he was bound, in the absence of any other information, to assume that every material averment of the petition was found against Dyson Jackson and the other defendants.

The law is well settled that one who is neither a party nor privy to an action is not only not bound by the judgment therein, but he can derive no benefit from it.    (*Manley v. Debentures Co.*, 64 Kan. 573, 68 Pac. 31; *Ervin v. Morris*, 26 Kan. 664.)    Where, however, a judgment or decree operates in law as a conveyance, one who is not party or privy to the action may avail himself of the effect of the judgment as a transfer to the same extent that he may rely upon a voluntary conveyance of the title.    In *Lockwood v. Meade*, 71 Kan. 739, 741, 81 Pac. 496, it was said in reference to cases which properly include an order for one party to convey to another whatever interest he may have in the real estate involved, "such a decree would, of course, effect a transfer of title as effectually as a voluntary conveyance.    (*Woolworth v. Root*, 40 Fed. 723, 726.)"    The decree in the first creditors' suit specifically declared that the title to the real estate should be vested in Dyson Jackson.    It was not, however, the purpose of the creditors' suit to vest the title in him; but rather to obtain a decree holding in effect that the title always had been in him, and that the judgments of the plaintiffs were liens on the real estate, notwithstanding the conveyances.    If a judgment in favor of one creditor who brings proceedings in aid of execution, or what is usually termed a creditor's bill, operates in every instance to vest the title of the real estate in the debtor, it would seem a useless proceeding to invite or permit other creditors to come in and become parties to the suit; and yet much learning of the courts has been brought to bear upon the right of other creditors to intervene and share in the costs of the proceeding.

Really, the creditor who brings the suit in his own behalf is interested, not in securing a judgment which shall operate as a voluntary conveyance or transfer of the title, but his sole purpose is to have a decree declaring his judgment a lien on the real estate, notwithstanding the fraudulent transfer. It would seem, therefore, that Kinkel cannot rely on the judgment in the first creditors' suit as having the effect of a voluntary transfer of the title to Dyson Jackson.

Plaintiff had a cause of action entirely independent of the effect of the decree in favor of Lamb and Crowley, a cause of action based upon the lien of his judgment and the allegations in his petition to the effect that the land belonged in fact to Dyson Jackson when his judgment was rendered. Under the provisions of section 474 of the civil code, by satisfying the judgment and filing notice with the clerk of his intention to claim repayment, Kinkel became entitled to the benefit of the judgment as owner for the purpose of enforcing repayment. (*Harris v. Frank,* 29 Kan. 200.) A judgment in this state is a lien on whatever equitable interests the judgment debtor has in real estate. (Civ. Code, § 522.) In *Poole v. French,* 71 Kan. 391, 80 Pac. 997, it was ruled that land held by an equitable title may be levied upon and sold by virtue of a general execution, and further that the remedy by a creditor's bill, or proceedings in aid of execution, is merely cumulative to that afforded by a general execution. The judgment which plaintiff owns against Dyson Jackson was a lien upon the equitable interests of Dyson Jackson in the real estate in question from the first day of the term at which it was rendered. It was of record when Chase purchased the land. All that remained for Kinkel to establish was, that when Dyson Jackson repurchased the land he took the title in the name of his wife and son in fraud of creditors. The question of actual notice was not a material one. If it had been the court could not sustain a demurrer on the ground that the evidence offered to show actual notice was insufficient, because defendant's demurrer admitted the truth of every fact proved by the evidence and of every reasonable inference that might be drawn therefrom in plaintiff's favor.

From the statement of the trial court in sustaining the demurrer, it is apparent that the real issues were lost sight of,

and that the case was determined upon the effect of a failure to record a journal entry of the judgment in the first creditors' suit, and the necessity of showing that Chase had actual notice of the fraudulent transfers, rather than upon any failure of plaintiff to establish fraud. Proof of actual notice was not necessary, because if, in fact, the real estate belonged to Dyson Jackson when plaintiff's lien attached, the plaintiff must prevail. In view of these facts, and the further fact that the same court has once held that the transfers were fraudulent, we think justice requires that the order sustaining the demurrer should be reversed, and that the plaintiff should be permitted to try out the question of fraud.

Reversed and remanded.