No. 36,332

GENEVA GATES, *Appellee,* v. L. C. GATES, *Appellant.*

(163 P. 2d 395)

Opinion filed November 10, 1945.

*Austin M. Cowan,* of Wichita, argued the cause, and *John W. Madden, Jr.,* of Wichita, was on the briefs for the appellant.

*Walter F. McGinnis,* of El Dorado, argued the cause for the appellee.

The opinion of the court was delivered by

PARKER, J.: This was an action by a wife against her husband for divorce, division of property, and custody of a minor child. The husband appeals from all orders, judgments and decisions of the trial court under which the property of the parties was divided, the wife was granted a divorce and given custody of the child and the costs including attorneys' fees were taxed against him.

The petition in this case was filed March 17, 1943. Defendant answered in due time and on June 4, 1943, all parties being personally present and represented by counsel, the cause proceeded to trial and was completed. The only record made on such date of the judgment rendered appears in the trial docket. There the following notation is found, "June 4, 1943, both parties present and presented their evidence, court takes case under advisement."

No further proceedings worthy of note were had in the cause until November 12, 1943. On that date the defendant through an attorney other than the one who represented him at the trial filed a motion alleging in substance that at the original hearing the court had not rendered a final decree divorcing the parties and awarding the custody of the child to the wife, but had merely continued the cause until some later date at which time all matters therein involved were to be finally determined. The prayer of such motion was that the court reopen the case, permit the defendant to introduce additional evidence, grant him an absolute divorce with care and custody of the minor child, and award him all property owned by the parties at the time the action was instituted. This motion was overruled on November 15, 1943.

While the record does not so state we assume from what transpired subsequently that the trial court on November 15, 1943, or some later date, required the parties to appear on March 9, 1944, for the purpose of holding a hearing on the question of how the property belonging to the parties was to be divided. At any rate, all parties appeared that day and were informed by the court that was the subject to be considered and determined. However, before the hearing proceeded there ensued a long colloquy between counsel for defendant and the trial judge. Counsel sought to again present

his motion to reopen the case and renewed his contention that at the hearing on June 4, 1943, no final judgment as to divorce and custody had been rendered and that such matters as well as questions pertaining to division of property were still open for further consideration. No useful purpose would be served by relating in detail the extended argument appearing of record. It suffices to say that the trial judge in plain and unequivocal language advised counsel that, irrespective of whether a journal entry had been prepared or filed and notwithstanding what might or might not appear of record, he had on June 4, 1943, at a time when all parties were present and represented by counsel, rendered judgment granting plaintiff a divorce and awarding her the custody of the. child and had continued only that phase of the case having to do with disposition of the property. He then announced the matter was before him only on the issue of division of property, refused to permit defendant to adduce evidence on any other subject, and proceeded with the hearing on that basis. On its conclusion he took the subject under advisement and on November 22, 1944, rendered judgment, setting over to the plaintiff certain property valued at $2,955.02, and to the defendant other property valued at a like amount, and directing that defendant pay the costs of the action including attorneys' fees. The same day defendant's motion for new trial was filed, presented, and overruled. A journal entry of this judgment was signed by the court and filed on November 23, 1944.

Subsequently, the journal entry of the judgment rendered on the 4th day of June, 1943, was signed by the trial judge and on November 30, 1944, it was filed in the office of the clerk of the district court. Recitals therein to be found with respect to action taken by the trial court and the judgment rendered by it on such date read as follows:

"It Is Therefore by the Court Ordered, Adjudged, and Decreed that the plaintiff be, and she hereby is divorced from the defendant herein and all marital relations heretofore existing between the parties hereto are hereby canceled, set aside, and held for naught. It is further ordered that the plaintiff have the care, custody and control of the minor child, David Wayne, subject to the defendant's right to visit with said minor child at any and all reasonable times and to take him· into his custody for visits from time to time. It is further ordered that defendant pay to plaintiff the sum of $15.00 per week beginning with the date hereof and continuing weekly during the minority of said child or until further order of this Court. It is further ordered that the

settlement of property rights as between the parties hereto be made at a future date and jurisdiction therefore is retained by the Court."

December 1, 1944, defendant filed a second motion for new trial, described by his counsel as a formal motion for new trial. It does not appear this motion was ever presented or passed upon by the trial court.

Notice of appeal was served on counsel for plaintiff on December 1, 1944. We are not advised by the parties as to when it was filed with the clerk of the district court and have been obliged to search the case file in order to obtain the information. It discloses such notice was not filed with that official until December 4, 1944.

Appellant's specifications of error are quite numerous but their nature is such they need not be detailed. Most of them hinge around the proposition of whether a judgment was actually rendered by the trial court on June 4, 1943. If that question is answered in the affirmative other contentions become of little or no consequence. We direct our attention, therefore, to its decision.

It is first urged there was no judgment because of the notation on the trial docket to the effect the court had taken the case under advisement. Conceding as we must, such was the entry, that fact in itself is not decisive. Long ago this court held that the minutes made by the judge of the court upon his trial docket constitute no part of the record of the case. (*Pennock v. Monroe,* 5 Kan. 578.) In commenting upon that decision this court in *Gilmore v. Salt Co.,* 92 Kan. 18, 139 Pac. 1168, said:

"The entry made upon the trial docket by the judge was a mere memorandum, not a formal record. (*Pennock v. Monroe,* 5 Kan. 578.) It served to indicate the general scope of the decision, but did not preclude a subsequent amplification and formulation of details. The statement of the judge as to what was actually decided is necessarily conclusive. . . ." (p. 20.)

Still later in *Van Valkenburg v. Mackey,* 122 Kan. 204, 251, Pac. 407, it was stated:

"The petitioner relies upon the circumstance that the memorandum made by the judge on the trial docket did not mention the hour at which the stay of execution was to expire, but this omission could not in any degree impair the force of the official record of the action of the court. . . ." (p. 205.)

In *Hart v. Hart,* 98 Kan. 745, 161 Pac. 585, we held:

"On a motion to correct the entry of a judgment so that it should speak the truth, where it was found upon disputed evidence that the judgment as originally entered did not correspond with the judgment actually rendered,

the finding, which was based in part on the knowledge and recollection of the judge as to the true judgment rendered, must be upheld on appeal." (Syl.)

And on page 746 of the opinion said:

"It is conclusively settled that the court may at any time correct a judgment entry so that it will conform to the judgment that was actually rendered. (*State v. Linderholm,* 90 Kan. 489, 135 Pac. 564, and cases cited.) The amendment may be made upon any satisfactory evidence, parol as well as written. Although there are decisions in other courts to the contrary, it has been determined here that a correction of the judgment may be based on the knowledge and recollection of the judge as to the facts which occurred at the trial, and of the findings and orders that were then made. (*Christisen v. Bartlett,* 73 Kan. 401, 84 Pac. 530.) Here the district judge has determined that the entry originally made did not express the judgment that was actually rendered by him, but that the modified entry does correctly recite what took place at the trial according to his knowledge and recollection, and other testimony was produced which supported his determination. What transpired when the judgment was announced is a disputed question of fact, and upon the record before us it must be held that the evidence justified the amendment of the record."

To the same effect is the later case of *Morton v. Morton,* 149 Kan. 77, 86 P. 2d 486, holding:

"All courts have the right and are under a duty to make their records speak the truth and the whole truth, whether the parties to the action or any other person wishes them to do so or not, and a court may therefore direct a *nunc pro tunc* entry on its own motion." (Syl. ¶ 1.)

See, also, *Elliott v. Elliott,* 154 Kan. 145, 114 P. 2d 823.

The same rule applies with respect to correction of journal entries. In *Christisen v. Bartlett,* 73 Kan. 401, 84 Pac. 530, wherein the question of whether or not a journal entry which had been filed correctly recited the judgment, we held:

"A district court has the power to correct the entry of a judgment so as to cause it to speak the truth after the expiration of the term at which it was rendered, and upon the personal knowledge of the judge of what took place in court at the time of its rendition." (Syl. ¶ 1.)

And in the same case at page 403 of the opinion, with respect to the finality of the decision of the district judge on such a question, said:

"The personal knowledge of the judge as to what had taken place in his presence was equivalent to evidence on the subject, and a decision of fact made upon that basis cannot be reviewed here."

Note, also, the statement in *Perkins v. Ashmore,* 144 Kan. 540, 541, 61 P. 2d 888:

"Rendition of judgment is one thing, and a judgment may not be modified, on simple motion to modify, after lapse of the term. Journal entries are something else, and may be correct or incorrect. Correction of a journal entry purporting to recite what the court did, to make the journal entry show what the court actually did, may be made after lapse of the term at which judgment was rendered." (p. 541.)

Likewise in *Tincknell v. Tincknell*, 141 Kan. 873, 44 P. 2d 212, where the following statement appears:

"When the question of correctness of the record is raised, the court must determine the matter as any other question of fact, except that the court's own knowledge of what the judgment was may be utilized and may be conclusive. In this instance this court cannot say the district court did not know what the judgment was, and the authority of the district court to make the record speak the truth by *nunc pro tunc* entry has been declared in so many cases that it is needless to cite them." (p. 877.)

See, also, *Bush v. Bush*, 158 Kan. 760, 762, 150 P. 2d 168; *Overlander v. Overlander*, 126 Kan. 429, 268 Pac. 828 and *State, ex rel., v. City of Stafford*, 99 Kan. 265, 269, 161 Pac. 57.

In the case last cited it should be noted that this court held there was no question about the power of the lower court to correct the journal entry so as to make it speak the truth and set out the judgment that was rendered, even though the judgment as first recorded had theretofore been before the Supreme Court for review.

It is true, of course, there was no journal entry of judgment on file in the case at bar when the question arose as to what judgment had been rendered, but what has been said with respect to the correction of journal entries in cases where it is claimed the record does not speak the truth is equally applicable to a situation where the trial court of its own accord announces its trial docket does not reflect the judgment actually rendered by it. It is for that reason the foregoing cases with respect to principles applicable in proceedings to correct errors in journal entries have been cited.

Our attention is next directed to G. S. 1935, 60-3122, which reads:

"All judgments and orders must be entered on the journal of the court, and specify clearly the relief granted or order made in the action."

It is argued that because the judgment as rendered was not entered on the journal of the court by the clerk that the judgment itself must fall. Not so. This court has decided to the contrary. See *Kinkel v. Chase*, 102 Kan. 275, 169 Pac. 1134, where it was held:

"The omission of the clerk to perform the ministerial duty of recording a

judgment does not destroy the judgment, nor does its validity or effect remain in abeyance until it is formally entered on the journal." (Syl. ¶ 1.)

And in *State v. Linderholm,* 90 Kan. 489, 135 Pac. 546, where it is said:

"It never was contemplated that the entry of a solemn judgment of a court of record could be made to depend upon the whim or caprice of an attorney upon one side or the other of a cause or upon the failure of the attorneys on opposing sides to agree to the form of the judgment. The duty of the clerk is to make a true record of the order or judgment of the court. If for any reason the record fail to speak the truth, the court at any time may make an order correcting the same. This has been often decided (and cases cited)." (p. 492.)

To the same effect is *Continental Oil Co. v. Mulich,* 70 F. 2d 521, which holds:

"Judgment was duly 'rendered' when ordered or pronounced by state court, regardless of entry in journal, since such entry is not the 'judgment' but formal evidence thereof." (Headnote, ¶ 9.)

Upon the same subject, Mr. Black in his work on Judgments, Vol. 1, §§ 106, 110, uses the following language:

"The rendition of a judgment is the judicial act of the court in pronouncing the sentence of the law upon the facts in controversy as ascertained by the pleadings and the verdict. The entry of a judgment is a ministerial act, which consists in spreading upon the record a statement of the final conclusion reached by the court in the matter, thus furnishing external and incontestable evidence of the sentence given, and designed to stand as a perpetual memorial of its action. It is the former, therefore, that is the effective result of the litigation. In the nature of things, a judgment must be rendered before it can be entered. And not only that, but though the judgment be not entered at all, still it is none the less a judgment. The omission to enter it does not destroy it, nor does its vitality remain in abeyance until it is put upon the record. The entry may be supplied, perhaps after the lapse of years, by an order *nunc pro tunc.* But it must not be supposed that this proceeding is required to give existence and force, by retrospection, to that which before had none. As is said by the supreme court of California: 'The enforcement of a judgment does not depend upon its entry or docketing. These are merely ministerial acts, the first of which is required to be done for putting in motion the right of appeal from the judgment itself, or of limiting the time within which the right may be exercised, or in which the judgment may be enforced; and the other, for the purpose of creating a lien by the judgment upon the real property of the debtor. But neither is necessary for the issuance of an execution upon a judgment which has been duly rendered. Without docketing or entry, execution may be issued on the judgment and land levied upon and sold, and the deed executed by the sheriff, in fulfillment of the sale, not only proves the sale, but also estops the de-

fendant from controverting the title acquired by it.' And it follows, *a fortiori*, that if the entry, though attempted to be made in due form, does not correctly record the sentence of the court, or is defective or ambiguous or otherwise exceptionable, still this will not weaken the force of the judgment as a judgment." (§ 106.)

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The object of this entry is to furnish an enduring memorial and incontestable evidence of the judgment, and to fix its date for purposes of appeal or creating a lien. But, as was stated in the beginning of this chapter, this proceeding is ministerial only, and is not essential to the validity of the judgment itself. It is none the less the judgment of the court because not entered by the clerk. And, except for certain special purposes, it does not remain inchoate or unfinished until so entered. Hence the neglect or failure of the clerk to make a proper entry of record of the judgment, or his defective or inaccurate entry of it, will not, as between the parties, operate to invalidate the judgment. 'The fact that the clerk did not perform his entire duty in making up the record cannot deprive parties of their rights.'" (§ 110.)

While none of the authorities to which we have heretofore referred deals with the exact situation confronting us at the moment the principles involved are similar in character, and it must follow that if the trial docket, the journal entry of judgment and the court journal may be corrected by a court to speak the truth, it may, where the question of whether or not it has actually rendered a judgment is raised by motion. to reopen the case and permit additional testimony, determine that matter on personal recollection of what its decision was at the time the case was before it. To hold otherwise would only result in confusion and intolerable consequences. We therefore hold that judgment for divorce and custody of the minor child was rendered on June 4, 1943, as found by the trial court and that its decision on that factual question was conclusive and is not open for review on appeal.

The fact the journal entry of judgment was not filed until November 30, 1944, does not abrogate the judgment nor does its vitality remain in abeyance until such journal entry is filed or put upon the record. A judgment is rendered and becomes effective when it is ordered or pronounced by the court. Long ago this court in *Iliff v. Arnott*, 31 Kan. 672, 3 Pac. 525, held:

"If a judgment be ordered and its terms prescribed by the court during a term, it is a judgment rendered in term-time, although the entry thereof be not in fact prepared and transcribed on the journal until after the close of the term. [*State v. Montgomery*, 8 Kan. 351.]" (Syl. ¶ 1.)

To the same effect is *Miller v. Phillips*, 92 Kan. 662, 141 Pac. 297:

"A journal entry speaks as of the date the judgment was rendered, and its validity is not impaired by the expiration of the term in the meantime." (Syl. ¶ 3.)

See, also, *Kinkel v. Chase,* supra, and *Continental Oil Co. v. Mulich,* supra.

Notwithstanding the decisions heretofore cited appellant directs attention to Rule 49 of this court prescribing the procedure to be followed by parties in the preparation and approval of journal entries, also to Rule 50 providing that when approved the journal entry shall be signed by the judge, filed with the clerk, and recorded at length on the journal. He states that even if the trial court rendered judgment on June 4, 1943, these rules were not complied with and insists that failure to conform therewith vitiates the judgment. This contention is without merit. We find nothing in the rules mentioned or in our decisions which even tends to sustain it. Failure to comply with the rules may, and quite often does, subject offending parties to penalties for their violation but such inaction does not nullify a valid judgment once it has become effective.

With effective date and its force and effect determined, resort to the statute makes it apparent there is nothing here for review on errors assigned with respect to the judgment awarding custody of the minor child and granting the divorce. No appeal was attempted to be perfected for more than seventeen months after its rendition. This was too late under either G. S. 1935, 60-1512 or G. S. 1943 Supp. 60-3309. In such a situation this court has no jurisdiction to review assignments of error relied on as a basis for reversal of the judgment (*Farrow v. Farrow,* 160 Kan. 30, 159 P. 2d 400; *Zagranis v. Zagranis,* 159 Kan. 456, 156 P. 2d 847, and *Palmer v. Helmer,* 159 Kan. 647, 157 P. 2d 531).

Of no consequence is the fact appellant filed a formal motion for new trial on December 1, 1944, which, as has been stated, does not appear to have been passed upon by the trial court. Just why this motion was filed or what place it has in this appeal is not revealed by the record or arguments of counsel. We assume appellant's theory was that the judgment of June 4, 1943, did not become effective until the date the journal entry of judgment was filed. If so, his action did not accomplish its intended purpose, for as has been indicated the journal entry speaks as of the date the judgment was actually rendered. (*Iliff v. Arnott,* supra, and *Miller v. Phillips,* supra.) In any event under any other theory the motion was filed

too late, is a nullity and of no avail to appellant. Nor does the fact it was not passed upon by the trial court have any legal significance whatsoever (*Oliver Farm Equipment Co. v. Foster,* 134 Kan. 654, 8 P. 2d 364; *Balandran v. Compton,* 141 Kan. 321, 41 P. 2d 720, and *City of Leavenworth v. Pennington,* 146 Kan. 459, 72 P. 2d 78).

There remains for review specifications of error having to do with the judgment rendered on November 22, 1944.

It is argued the court had no power to retain jurisdiction and make division of the property of the parties subsequent to June 4, 1943, but was required to dispose of all matters and things involved in the action on that date. We do not agree. This court definitely answered that contention in *Morton v. Morton,* 149 Kan. 77, 86 P. 2d 486, where it was held:

"Upon entering a decree for divorce by default, the court ordered the defendant to pay the plaintiff $150 per month as alimony, and in its judgment expressly retained jurisdiction of the case for the purpose of making any order necessary for the support and maintenance of the plaintiff. As the order for alimony was void, and no division of the property had been made as provided by law, *held,* the order of the court in retaining jurisdiction was valid and that a decree at the following term of court fixing alimony at a sum in gross and directing a division of the property, at which time the parties were present in person and were represented by counsel was valid and binding." (Syl. ¶ 3.)

To the same effect is *Hoffman v. Hoffman,* 156 Kan. 647, 135 P. 2d 887, where the general rule is stated thus:

"A judgment rendered at a subsequent term, where the district court had retained jurisdiction for the purpose of disposing of issues not determined by a former judgment, is not invalid." (Syl. ¶ 8.)

Next it is urged the trial court erred in awarding appellee a division of property which was inequitable and unjust. We are not disposed to labor the question. A well-settled rule of this court is that a property division made by the trial court in a divorce proceeding will not be set aside or disturbed unless it is clearly shown there was abuse of discretion. (*Leiter v. Leiter,* 152 Kan. 287, 103 P. 2d. 809; *Wittig v. Wittig,* 151 Kan. 440, 99 P. 2d 750; *Falk v. Falk,* 139 Kan. 51, 30 P. 2d 124 and *Miller v. Miller,* 97 Kan. 704, 156 Pac. 695). We have carefully examined the record. It discloses the property was valued by the trial court and then equally divided between the parties. We find nothing to indicate abuse of discretion, and of a certainty, it cannot be said appellant makes a clear showing it existed.

Finally our attention is called to allowance of attorney's fees. The journal entry reveals the court rendered judgment against appellant for the balance of a fee due from him to the attorney who represented him at the original hearing but who, we are told by his present counsel, was subsequently discharged. We find nothing in the statute which justifies or permits such action. The portion of the decree allowing this fee is a nullity and the judgment is modified in that particular.

The judgment as modified is affirmed.