[Civ. Nos. 19083, 19199. Second Dist., Div. Three. Dec. 26, 1952.]

CLAUDIA SMITH, Respondent, v. LEE H. SMITH, Appellant.

Bertrand Rhine and Robert Kingsley for Appellant.

Charles C. Montgomery, Jr., for Respondent.

VALLÉE, J.—Two appeals by defendant are here consolidated.

In No. 19083, defendant appeals from a judgment in favor of plaintiff decreeing that a Kansas decree of divorce, as amended by a *nunc pro tunc* order, be made a judgment of the superior court of California.

In No. 19199, defendant appeals from an order, dated March 28, 1952, made on the recommendation of a commissioner, finding him in contempt but permitting him to purge himself on payment of certain monthly sums, and from an order, dated April 18, 1952, made after exceptions to the order of March 28, 1952, had been filed and heard, which disallowed the exceptions and affirmed the order of March 28, 1952.

Chronologically the facts are:

January 17, 1949, plaintiff filed a petition in the District Court of Sedgwick County, Kansas, seeking a decree of divorce from defendant, alimony, attorney's fees, and general relief.

February 15, 1949, defendant appeared, answered, and filed a cross-petition for a decree of divorce.

Thereafter, several pretrial conferences were had between the attorneys for the parties, respecting a property settlement agreement. Shortly before the action came on for trial, plaintiff, her attorney, and the attorney for defendant appeared in the chambers of Judge Ross McCormick[1] and discussed with him the property settlement, in which discussion all of the property of the parties was disclosed to the judge. Included among the items which the parties agreed plaintiff should receive were 1,000 shares of the common stock of Beech Aircraft Corporation, which had been accumulated by the parties during their marriage, and the payment of $2,000 by defendant to plaintiff. Defendant's attorney disclosed that defendant had sold the stock approximately one month after plaintiff filed her petition for divorce and about a week before the conference, but agreed that defendant would deliver to plaintiff 1,000 shares "even if it

[1] Judge of Division No. 1 of the District Court of Sedgwick County, Kansas.

was necessary for him to purchase it on the market." As a result of the conference, the rights of the parties in their property were determined and its disposition agreed upon with the approval of the court. Defendant's attorney informed the court that defendant would not prosecute his cross-petition but would let the answer stand as a matter of record. Prior to the trial a "Journal Entry of Judgment and Decree of Divorce" was approved and signed by the attorneys for the parties.[2]

February 25, 1949, the matter came on for hearing before Judge Ross McCormick. At the conclusion of plaintiff's testimony and that of her corroborating witness, the trial judge said: "She is granted the divorce and the property settlement is approved and that settlement is approved by the Court and becomes a part of the decree of this Court." The judge thereupon signed the "Journal Entry of Judgment and Decree of Divorce."

The "Journal Entry of Judgment and Decree of Divorce" contains, among others, the following findings:

"The court further finds that the parties have heretofore entered into a property settlement dividing and fully determining and settling their property rights, the substance of which settlement is submitted to the court, and the court finds that the respective parties were both fully advised by their respective counsel concerning their respective rights, and that said settlement was fairly entered into and the property settlement concerning all of the said matters should be and is by the court approved. [Here follow findings as to specific items of property which plaintiff and defendant were to receive, with which we are not here concerned.]

"The court further finds that the defendant shall deliver and transfer unto the plaintiff or her attorneys one thousand shares of the common stock of Beech Aircraft Corporation of Wichita, Kansas, and the further sum of Two Thousand Dollars ($2,000) to be paid at the rate of Two Hundred Fifty ($250) Dollars per month, beginning on the 1st day of April, 1949, and each and every month thereafter until

---

[2]There was evidence that it is the practice in Kansas, when the disposition of the property is agreed upon and the only matter left is the presentation of the evidence for a divorce, that a "Journal Entry of Judgment and Decree of Divorce" be drawn and presented to the opposing counsel for his approval prior to the appearance in court of the plaintiff to present evidence.

paid.'' The decree of divorce read that: "It is further by the Court considered, ordered, adjudged and decreed that the property settlement between the parties be and the same is hereby approved in accordance with the foregoing findings of the Court,'' but did not make an award of the specific items of property which each party was to receive under the findings. No appeal was taken from the judgment and it became final.

Thereafter, steps were taken by plaintiff to have the Kansas decree amended, and a *nunc pro tunc* order was made correcting the "Journal Entry of Judgment and Decree of Divorce'' by ordering that the parties perform the property settlement agreement, directing the defendant to transfer and deliver to plaintiff or her attorneys the 1,000 shares of stock and to pay to her the sum of $2,000 at the rate of $250 a month beginning on April 1, 1949. The order was signed by Judge Charles T. McClintock who was sitting for Judge Ross McCormick.

Plaintiff then commenced the present action to have the Kansas judgment, as amended by the *nunc pro tunc* order, made the judgment of the superior court of California. Judgment was rendered in favor of plaintiff, defendant was ordered to forthwith transfer and deliver the stock to plaintiff or her attorney, to pay her the $2,000, and to pay her attorney's fees in the sum of $2,000, from which judgment defendant appeals.

### The Appeal from the Judgment

Defendant first contends that the judgment directing transfer and delivery of the stock and the payment of $2,000 to plaintiff is not enforceable because the Kansas court was without jurisdiction to adjudicate the same since the plaintiff's complaint in the Kansas action did not contain any allegation with reference to any property settlement agreement or any division of property, or any prayer therefor, but simply prayed for a divorce, alimony, attorney's fees and general relief. Defendant appeared and answered in the Kansas action, and thereafter the issue of a property settlement was tendered by the parties themselves. No appeal was taken, the judgment became final, and it is not now subject to collateral attack upon the ground urged. Where a cause of action is within the general jurisdiction of a court, the appearance of the parties and the submission of the cause on its merits confer jurisdiction to

try the issues presented.[3] ■ An unpleaded issue tried without objection becomes an issue in the case.[4]

Defendant next contends the *nunc pro tunc* order is void on its face because (1) it made a substantive change and corrected a judicial error rather than a clerical error, and (2) it was made without notice and by a judge other than the one who rendered the original judgment.

■ "Clerical" errors are, generally speaking, those errors, mistakes, or omissions which are not the result of the judicial function. ■ Mistakes of the court are not necessarily judicial errors. ■ The distinction between a "clerical" error and a "judicial" one does not depend so much upon the person making the error as upon whether it was the deliberate result of judicial reasoning and determination.[5]

■ The law of Kansas, the jurisdiction where the judgment was rendered, is controlling as to its validity and finality.[6] ■ In line with the general rule, it is settled in Kansas that a court, on motion of an interested party or on its own motion, may, at any time, correct or amend by a *nunc pro tunc* order any clerical error so as to make the record speak the truth and show the judgment which was actually rendered by the court.[7] ■ The function of a *nunc pro tunc* order is merely to correct the record of the judgment and not to alter the judgment actually rendered —not to make an order now for then, but to enter now for then an order previously made.[8] ■ The question presented to the court on a hearing of a motion for a *nunc pro tunc* order is: What order was in fact made at the time by

---

[3]*Calkins* v. *Calkins*, 155 Kan. 43 [122 P.2d 750]; *Rio Vista Min. Co.* v. *Superior Court*, 187 Cal. 1, 5 [200 P. 616]; *Wells Fargo & Co.* v. *City & County of San Francisco*, 25 Cal.2d 37, 43 [152 P.2d 625]; see, also, 1 Freeman on Judgments, 5th ed. 603, § 305.

[4]*Moeller* v. *Packard*, 86 Cal.App. 459, 460 [261 P. 315].

[5]1 Freeman on Judgments, 5th ed., 283, § 146; *LaMar* v. *Superior Court*, 87 Cal.App.2d 126, 130 [196 P.2d 98]; *Benway* v. *Benway*, 69 Cal.App. 2d 574, 580 [159 P.2d 682]; 14 Cal.Jur. 995, § 72; 49 C.J.S. 449, § 237.

[6]15 Cal.Jur. 241, § 246; 50 C.J.S. 444, § 869.

[7]*Cazzell* v. *Cazzell*, 133 Kan. 766 [3 P.2d 479, 481]; *Elliott* v. *Elliott*, 154 Kan. 145 [114 P.2d 823, 826]; *Bush* v. *Bush*, 158 Kan. 760 [150 P.2d 168, 170]; *Gates* v. *Gates*, 160 Kan. 428 [163 P.2d 395, 398]; *Hinshaw* v. *Hinshaw*, 166 Kan. 481 [203 P.2d 201, 205].

[8]*Bush* v. *Bush*, 158 Kan. 760 [150 P.2d 168, 170]; *Schneider* v. *Schneider*, 147 Kan. 621 [78 P.2d 16, 18]; *Elliott* v. *Elliott*, 154 Kan. 145 [114 P.2d 823, 825]; *Hinshaw* v. *Hinshaw*, 166 Kan. 481 [203 P.2d 201, 205].

the trial judge?[9] ▓▓ What transpired when the judgment was announced is a question of fact; and where the findings thereon are supported by substantial evidence, they are conclusive.[10] ▓▓ An amendment by a *nunc pro tunc* order may be made upon any satisfactory evidence.[11] ▓▓ The *nunc pro tunc* order here recites that the court examined the files, and reviewed the court's minutes and the law involved. These minutes are presumably a trustworthy chronicle of events as they transpired at the trial and are ordinarily controlling on the question of what order was in fact made.[12] ▓▓ The minutes here revealed that the judge not only approved the property settlement agreement but stated at the time the divorce decree was granted that the property settlement agreement was to become "a part of the decree of this Court." It was, therefore, within the court's inherent power to correct the "Journal Entry of Judgment and Decree of Divorce" so as to conform to the judgment actually rendered by the court. ▓▓ The fact that the original journal entry referred to eight items in the property settlement agreement, four in favor of defendant and two in favor of plaintiff, and that only two of the eight items were carried into the judgment by the *nunc pro tunc* order does not indicate that the making of the latter order was judicial rather than clerical. It appears from the journal entry and the evidence that the six items not included in the *nunc pro tunc* order had been executed prior to the making of the latter order. The error corrected was a "clerical" and not a "judicial" one.

▓▓ Defendant claims that notice of the application of the *nunc pro tunc* order was jurisdictional and that since the order shows on its face that it was made on *ex parte* application, it is void. This contention is without merit. It is settled in Kansas that notice is not necessary to con-

---

[9]*Elliott* v. *Elliott*, 154 Kan. 145 [114 P.2d 823, 825]; *Schneider* v. *Schneider*, 147 Kan. 621 [78 P.2d 16, 18]; *Aydelotte* v. *Brittain*, 29 Kan. 98; *Martindale* v. *Battey*, 73 Kan. 92 [84 P. 527, 529].

[10]*Gates* v. *Gates*, 160 Kan. 428 [163 P.2d 395, 398]; *Christisen* v. *Bartlett*, 73 Kan. 401 [84 P. 530, 85 P. 594]; *Tincknell* v. *Tincknell*, 141 Kan. 873 [44 P.2d 212, 214].

[11]*Gates* v. *Gates*, 160 Kan. 428 [163 P.2d 395, 398]; *Bush* v. *Bush*, 158 Kan. 760 [150 P.2d 168, 170]; *Martindale* v. *Battey*, 73 Kan. 92, [84 P. 527, 529]; *Christisen* v. *Bartlett*, 73 Kan. 401 [84 P. 530, 85 P. 594]; *United Zinc & Chemical Co.* v. *Morrison*, 76 Kan. 799 [92 P. 1114, 1115-1116].

[12]*Bush* v. *Bush*, 158 Kan. 760 [150 P.2d 168, 170]; *Elliott* v. *Elliott*, 154 Kan. 145 [114 P.2d 823, 825]; *Aydelotte* v. *Brittain*, 29 Kan. 98; *Boatman* v. *Boatman*, 142 Kan. 107 [45 P.2d 592, 593].

fer jurisdiction to make a *nunc pro tunc* order correcting a clerical error.[13]

 It is likewise of no consequence that the *nunc pro tunc* order was signed by a judge other than the one granting the original decree. It follows from the principle that a court has inherent power *at any time* to correct clerical errors so as to make the record speak the truth, that under some circumstances, whether it be the mere passage of time, absence, transfer, or other similar reason, the judge rendering the original judgment is not available and another must, therefore, correct the error. Where the record affords the evidence of the clerical error, as distinguished from the personal knowledge and recollection of the judge who made the error, there is no reason why another judge should not correct the error.[14] The clerical error in the present case appeared on the face of the record. There was no disputed question of fact. A *nunc pro tunc* order correcting a clerical error in a judgment made by a judge other than the judge who rendered the judgment has been upheld by the Supreme Court of Kansas.[15] Further there was evidence to the effect that under the law of Kansas if the records of the court show the discrepancy or ambiguity or omission, another judge sitting in the same court may enter an order *nunc pro tunc* correcting the error.

It is asserted that the judgment in the present action is void in purporting to order defendant to comply with the Kansas decree. It is well settled that a court may validly order a party to perform a specific act within his power, and that in ordering disposition of property of spouses pursuant to a property settlement agreement such an order is valid.[16] Since the Kansas decree was valid in this respect,

---

[13]*Christisen* v. *Bartlett*, 73 Kan. 401 [85 P. 594], on rehearing after opinion in 84 P. 530, where the court said, p. 595: ''A court of record has an inherent power over its own records which includes the authority to require the correction of any errors that may creep into them. This power is not lost by lapse of time or the expiration of a term of court. The duty of a court to see that its records speak the truth is an affirmative and active one, and it is not a jurisdictional prerequisite to its performance that one party should invoke it by motion or that the other should have notice before action is taken.''

[14]See *Estate of Goldberg*, 10 Cal.2d 709 [76 P.2d 508]; *LaMar* v. *Superior Court*, 87 Cal.App.2d 126 [196 P.2d 98].

[15]*Bush* v. *Bush*, 158 Kan. 760 [150 P.2d 168]; *Aydelotte* v. *Brittain*, 29 Kan. 98.

[16]*In re Lazar*, 37 Cal.App.2d 327 [99 P.2d 342]; *Creager* v. *Superior Court*, 126 Cal.App. 280 [14 P.2d 552]; *Tomkins* v. *Tomkins*, 89 Cal. App.2d 243 [200 P.2d 821]; *Palen* v. *Palen*, 12 Cal.App.2d 357 [55 P.2d 228].

the superior court had power to order defendant to comply therewith. The effect of a judgment of a sister state is the same in this state as in the state where it was made except that it can be enforced here only by an action or special proceeding.[17] To hold as contended by defendant would be to deny full faith and credit to the Kansas decree.

 Defendant next contends the court erred in awarding attorneys' fees in the present action because it is not one "to establish a foreign alimony suit, but rather to establish a judgment for division of property, or to enforce a simple contract. The judgment of the Court below was, neither in form nor in substance, a decree for alimony. And this action was brought long after marital status between the parties had terminated." The property settlement which the parties themselves put in issue in the Kansas action was not only approved by that court but its terms were incorporated in the decree and performance ordered. Plaintiff in the present action did not, as defendant argues, seek a mere money judgment but sought one establishing the Kansas decree as a judgment of the superior court of this state. By the judgment here the Kansas decree was so established, with the same force and effect as if it originally had been rendered in this state. *Wilson* v. *Wilson*, 33 Cal.2d 107 [199 P.2d 671], was an appeal from an order that the defendant pay certain "community debts" incurred by the plaintiff, his former wife, during their marriage, and from an order awarding attorneys' fees to the plaintiff's counsel. The trial court awarded the attorneys' fees for services rendered after the divorce decree had become final in connection with efforts of the wife's counsel to compel the defendant to comply with the decree directing him to pay "community debts." In holding that the trial court had power to make the award of attorneys' fees, it was said (p. 115) : ". . . [T]he trial court's power to award suit money does not cease merely because a final decree of divorce has been entered and no appeal therefrom has been taken within the time prescribed by law. Such an allowance may be made after the decree has become final, to enable a former wife to force payment of alimony ordered [citation] or to resist her former husband's application to have an allowance of alimony modified or terminated [citations].

"There is no essential difference in principle between an allowance of attorneys' fees in such cases and an allowance

---

[17]Code Civ. Proc., § 1913.

in a case such as this, where the wife seeks to compel compliance with an order made to accomplish a just division of the property of the parties.''[18] This principle applies here.

It is next contended that the award of $2,000 attorneys' fees is excessive. ▆ An allowance of attorney's fees is proper only if, before the services are performed, there has been an application by plaintiff for such fees and a stipulation by defendant or an order of the court that the fixing of the amount thereof could be postponed until the services had been performed.[19] In the present case there was such an application and such an order. ▆ An award of attorney's fees under circumstances such as are present here is a matter in the sound discretion of the trial judge, and his decision will not be disturbed in the absence of a clear abuse of discretion.[20] Although the case took only two days of actual trial, as defendant points out, other court appearances by plaintiff's attorneys were necessary on demurrers and a motion for summary judgment filed by defendant. The action required arrangements by the attorneys for the taking of depositions in Kansas and for the application for the *nunc pro tunc* order, considerable research and study by them of Kansas law, and a study and analysis of the Kansas proceedings. The record reveals the wife has no income. On the other hand, defendant, who is unmarried, earns a salary of $818 a month. The amount in controversy was about $20,000. ▆ ''Among the factors to be considered in determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding are the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed.''[21] ▆ We cannot say that the amount awarded is in excess of the reasonable value of the services rendered.

[18]See 39 Cal.L.Rev. 259.

[19]1 Cal.Jur. 999, § 52.

[20]*Parker* v. *Parker,* 22 Cal.App.2d 139, 142 [70 P.2d 1003]; *Gebhardt* v. *Gebhardt,* 69 Cal.App.2d 723, 728 [160 P.2d 177].

[21]*Berry* v. *Chaplin,* 74 Cal.App.2d 669, 679 [169 P.2d 453].

The court in the present action found (Finding Nos. IV and VI) that defendant sold the Beech Aircraft Corporation stock for the purpose and with the intent of defrauding plaintiff of her rights therein, and that he converted the stock to his own use in fraud of plaintiff's ownership and rights therein. Defendant asserts the court erred in making these findings. We agree. The judgment merely establishes the Kansas decree as a judgment of the superior court, directs compliance therewith, and awards attorney's fees. The findings complained of have no relevancy to the issues adjudicated. They are not material and should be excised. The error can be corrected without the necessity of a formal reversal.[22] Accordingly, those parts of findings IV and VI quoted in the margin[23] are stricken from the findings; and as thus modified, findings IV and VI are adopted as the findings of this court. On the oral argument counsel for plaintiff suggested that if defendant should be adjudged a bankrupt these findings would prevent his discharge from the obligations of the judgment. If the facts found are true, defendant will not be released of his obligation to transfer and deliver the stock by his discharge in bankruptcy.[24]

### The Appeal from the Orders Adjudging Defendant in Contempt.

Defendant did not comply with the judgment appealed from. He was cited for contempt for not complying. The court adjudged him in contempt, sentenced him to five days in the county jail, and suspended the sentence on condition that he pay plaintiff $250 monthly.

The order, dated March 28, 1952, heretofore referred to, was made after a hearing before a commissioner and his report thereon on the same day the report of the commissioner was filed without awaiting the five days for exceptions prescribed by section 259(2) of the Code of Civil Procedure. Defendant filed exceptions to the report of the commissioner, and on April 18, 1952, the court made an order

---

[22]*Warden* v. *Stoll*, 210 Cal. 374, 376 [291 P. 835].

[23](Finding IV): "It is true that said transfer of said stock by the Defendant Lee H. Smith was for the purpose and with the intent of defrauding the Plaintiff of her rights therein and to the stock awarded to her under and by virtue of said Kansas Judgment." (Finding VI): "It is true that the Defendant Lee H. Smith has converted said one thousand shares of stock of the Beach Aircraft Corporation of Wichita, Kansas to his own use and benefit and in fraud of the Plaintiff's ownership and rights therein."

[24]11 U.S.C.A. § 35.

disallowing the exceptions and affirming the order of March 28, 1952. Defendant appealed from the orders of March 28 and April 18, 1952, insofar as they adjudged him in contempt. The orders adjudging defendant in contempt are not appealable, and the appeals therefrom must be dismissed.[25]

The appeals from the orders of March 28 and April 18, 1952, are dismissed. The judgment is affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied January 12, 1953, and appellant's petition for a hearing by the Supreme Court was denied February 19, 1953. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.

---

[25]Code Civ. Proc., § 1222; *John Breuner Co. v. Bryant*, 36 Cal.2d 877, 878 [229 P.2d 356].