No. 37,555

School District No. 95, Marion County, Kansas, by Alex Hanchu, its Director, *Appellant*, v. Marion County School Reorganization Committee, D. M. Ward, John E. Wheeler, Herman J. Regier, P. F. Quiring and Harvey Kruse, Members, J. K. Warkentin, County Clerk of Marion County, Kansas, (Francis R. Roberts substituted as successor in office to said J. K. Warkentin as County Clerk), *Appellees*.

(208 P. 2d 226)

Opinion filed July 9, 1949.

*Braden C. Johnston,* of Marion, argued the cause, and *David W. Wheeler,* of Marion, was with him on the briefs for the appellant.

*Charles W. Ward,* of Peabody, argued the cause and was on the briefs for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was a suit to enjoin the disorganization of a common-school district. The trial court heard the evidence, found generally for defendants, overruled plaintiff's motion for a new trial and rendered judgment for defendants. Plaintiff has appealed.

We are first confronted with appellees' motion to dismiss the appeal upon the ground the notice of appeal was served too late, that is, more than two months from the date of judgment or order from which the appeal was taken. (G. S. 1947 Supp. 60-3309.) On this point the record discloses the following: At the trial both parol and documentary evidence was received. The case was continued for briefs and oral argument, after which, and on February 9, 1948, the court, as shown by the journal entry, ruled:

"The Court finds generally for the defendants upon all issues in this action, and announces in open court its decision that all relief prayed for in plaintiff's Petition, including the injunction sought therein, should be denied;"

and that defendants should recover judgment for costs. Two days later plaintiffs filed a motion for a new trial upon the grounds: (1) Erroneous rulings of the court during the trial; (2) that the decision and judgment are wholly contrary to the evidence; and (3) that the decision and judgment are wholly contrary both to the law applicable and to the evidence introduced. On September 16, 1948, the motion was heard upon briefs and oral argument, and overruled. On the same day, as shown by the journal entry, the court

"ORDERED, ADJUDGED AND DECREED that judgment be and the same is hereby rendered in favor of the defendants and against plaintiff upon all issues in this action; that all relief prayed for in plaintiff's Petition, including the injunction sought therein, be and the same is hereby denied; and that defendants do have and recover of and from plaintiff their costs incurred in the defense of this action, taxed by the Clerk of this Court at $50.15; . . ."

Appellees in their motion to dismiss the appeal contend final judgment was rendered for defendants on February 9, 1948. We do not so read the record. On that date the court announced a general finding for defendants upon all issues and that the relief prayed for by plaintiff should be denied. Judgment on these findings was not rendered until after the hearing of the motion for a new trial. The notice of appeal was served and filed within two months of that date. Appellees further contend that upon the hearing of the motion for a new trial only legal questions were

considered by the court and that there was no consideration by the court of the evidence. This contention really charges the court with not performing a judicial duty. When a motion for a new trial is upon the ground, among others, that the finding or judgment of the court is contrary to the evidence, or is not supported by the evidence, it is the duty of the court to consider that ground of the motion, unless it is specifically waived at the hearing. The record shows no such waiver. Neither does it contain anything tending to show that the court did not consider this ground of the motion as well as other grounds stated therein.

Considering plaintiff's appeal, the pertinent portions of the record may be stated as follows: The Marion County School Reorganization Committee (hereinafter referred to as Committee), organized and functioning for the reorganization of common-school districts under Chapter 291, Laws 1945 (G. S. 1947 Supp., ch. 72, art. 56), after due notice, held its first formal hearing on February 8, 1946, but no order pertaining to the disorganization of school districts was made at that time. Another hearing was held on February 19, 1946, at which considerable testimony was taken and a formal order made respecting the disorganization or the reorganization of some fifteen common-school districts. In this order the expressed purpose was to make the boundaries of certain common-school districts conterminous with certain rural high-school districts. As respecting Common School District 95, the order reads:

"(a) disorganizing Common School District 95 and assigning East half of sections 5 and 8; south half southwest quarter of Section 8, north half of northwest quarter of northwest quarter of Section 16, all of Section 17, north half of Section 20, and southeast quarter of Section 18, Township 17, Range 4 east of 6th P. M., to Rural High School District No. 2, Marion County, Kansas and all the remaining west part of said district to Rural High School District No. 1, Marion County, Kansas:"

Another paragraph of the order disorganized Common School District No. 90 and assigned all its territory to Rural High School District No. 1. Another paragraph of the order disorganized Common School District No. 98 and assigned all its territory to Common School District No. 115.

When this order was reported to the office of the state superintendent of public instruction he advised the committee that it was improper to attach the territory of a common-school district to a rural high-school district. Thereupon the Committee, as authorized by the statute (Laws 1945, ch. 291, § 8) for changing final orders

of reorganization, published notice of hearing and sent copies thereof to all the school districts affected and held another hearing regarding the modification of the final order dated February 19, 1946. The Committee met on May 16, 1946, at the time set for such hearing, and determined that the order of February 19, 1946 should be changed to the extent of assigning the west part of Common School District No. 95 to Common School District No. 90 and to the further extent of assigning the east portion of Common School District No. 95 to Common School District No. 49. There was also a change made with reference to the territory of common-school districts which had been assigned to another rural high-school district. No changes were made with reference to orders made on February 19 respecting the disorganization or assignment of territory of other common-school districts.

It appears that in typing this order at each of the six places where Common School District No. 95 was intended to be referred to the number stated was 98. In three of those places that was corrected before it was published. The order as partially corrected was officially first published on May 30, 1946, and a second time on June 6, 1946. Directly after the publication the secretary of the Committee noticed the inaccurate No. 98 and called it to the attention of the chairman of the Committee. The chairman of the Committee went to the secrtary's office, where he, or the secretary in his presence, changed the No. 98 where it appeared in the order to 95. They did this without calling the Committee together, but some members of the Committee were contacted either by telephone or by meeting on the street and approved the change. The order of May 16 as corrected was then officially published two times, the first being on June 13, 1946. It reads:

"SCHOOL DISTRICT REORGANIZATION

"The State of Kansas to all interested parties and school patrons of Rural High Schools, Nos. 1, 2, Marion County, Kansas, and Common School Districts in Marion County, Kansas, numbered 90, 95, 93, 49, and 116 in Marion County, Kansas

"You and each of you are hereby notified that The Marion County School Reorganization Committee having theretofore adopted a final reorganization plan affecting said district, which became final as of March 1, 1946, now finds that said plan as adopted needs to be changed for the reason that the taxation is unsatisfactory and the plan as to the above districts as published is not feasible, and therefore again re-organizes the territory involved in such order as to the above districts. after due notice to all interested parties and patrons of said districts, as follows; hereby making

"FINAL ORDER OF REORGANIZATION;—

"(a) by assigning from Common School District No. 95, Marion County, Kansas and attaching to Common School District No. 90, Marion County, Kansas instead of Rural High School District No. 1, Marion County, Kansas all of the territory lying west of a line commencing at the center north line of Section 5, Township 17, Range 4 east, through the center of Section 8 to northeast corner of south half of southwest quarter of said Section 8; thence west to the section line; thence south to southeast corner of northeast quarter of Section 18; thence west to center of said section; thence south to center of south line of said section 18; thence east to the southeast corner of said Section thence south along the east line of Section 19 to the south line of Common School District No. 95; and by assigning from said Common School District No. 95 and attaching to Common School District No. 49, all in Marion County, Kansas the territory of said Common School District No. 95 aforesaid, lying east of the above described division line; and disorganizing said Common School District No. 95, Marion County, Kansas;

"(b) by assigning all of Common School District No. 93 territory, except north half of Section 5 and Northwest quarter of Section 4, both in Township 18, Range 4 east and attaching same to Common School District No. 49, Marion County, Kansas, instead of to Rural High School District No. 2, same county; and by disorganizing said Common School District No. 93, Marion County, Kansas;

"(c) by assigning all of the territory of Common School District No. 116, Marion County, Kansas, except that lying south of Sections 34, and south of the center of Section 35 and 36, all in Township 17, Range 4 east to Common School District No. 49, Marion County, Kansas, instead of to Rural High School District No. 2, Marion County, Kansas; and disorganizing said Common School District No. 116.

"(d) This order shall become effective March 1, 1947, and makes no other changes in the original Final Order, dated February 19, 1946.

"Reference is hereby had to plans and charts on file with the County Superintendent of Education at his office, Marion, Kansas.

"You are further notified that any party, as defined by applicable law who is dissatisfied with this order of the Marion County School Reorganization Committee may apply in writing to this Committee for a rehearing in respect to the matters above determined by filing such application with the secretary of this committee, stating specifically the ground or grounds on which the applicant considers this plan or order to be unlawful or unreasonable, within the statutory time.

"Dated May 16, 1946.

"Marion County School
Reorganization Committee,
By D. M. Ward, Chairman,
P. F. Quiring, Vice-chairman,
Harvey Kruse,
John E. Wheeler,
Herman Regier.

"Attest: J. H. Franzen, Secretary."

The statute under which the Committee was acting (Laws 1945, ch. 291, § 10) provided that any party dissatisfied with an order of the Committee, within thirty days of the date of the last publication of the order, could apply to the Committee for a rehearing with respect to any matter determined by the Committee. It further provided for a hearing upon such an application and for an appeal from an adverse ruling of the Committee to the district court, and specifically provided:

"No cause of action arising out of any plan or order of the committee shall accrue in any court to any party unless such party shall make application for a rehearing as herein provided."

And section 11 provided for an application to obtain a review by the district court, and outlined the procedure therefor. There was no application for a rehearing of the order above quoted, published on June 13 and June 20, 1946. The result was that the order became final.

On March 14, 1947, the Committee gave the following notice:

"NOTICE OF COMMON SCHOOL DISTRICT ELECTIONS

"TAKE NOTICE:—

"Pursuant to Section 15, of Chapter 291, Session Laws of 1945 the Marion County School Reorganization Committee hereby designates a time and place of meeting, to wit: March 25, 1947, at 2 o'clock p. m., in the schoolhouse of the following Common School District, viz. No. 90, Ramona, Kansas, for the purpose of electing a school board consisting of Director, Clerk and Treasurer.

"This is an interim board to act until the annual meeting of Common School District No. 90, on April 11, 1947. There is a validating act in the legislature at this time.

"Legal voters of Common School District No. 95 lying W½ of Sec. 5 and NW¼ and N½ SW¼ Sec. 8, and N½ and SW¼ Sec. 18, N½ and N½ S¼ Sec. 19, all in Twp. 17—Range 4, and NE¼ Sec. 13, and E¼ Sec. 12, and E½ E½ Sec. 1, all in Twp. 17—Range 3 East, are eligible to vote at such election, as are those of No. 90. Dated March 14, 1947."

The legislature of 1947 enacted a statute, spoken of as the "Curative Act" (Ch. 377, Laws 1947; 1947 Supp. 72-5629), effective March 29, 1947, the pertinent portions of which read:

"That where the county school organization committee of any county, . . . has attached territory of one or more school districts to an established school district, . . . and the order of the county committee . . . became final on or before March 1, 1947, such order . . . attaching territory to an established school district . . . is hereby declared to be operative and effective and validated as of March 1, 1947, even though all preliminary steps necessary to' make such order operative and effective were not complied with: . . ."

On April 22, 1947, this action was brought in the district court for a decree that the order of the Committee of May 16, 1946, as published June 13 and 20, 1946, is void, and enjoining defendants from attempting to put it in force. Since there had been no attempt to have a rehearing before the Committee, or to take the matter into the district court by appeal, or an application for review, as authorized by the statute (Laws 1945, ch. 191, §§ 10 and 11), this action was a collateral attack upon the validity of the order. In fact it is the kind of an action the statute said could not be brought. Obviously, plaintiff cannot succeed in this action unless the order attacked is void, as distinct from being irregular or voidable. This is recognized by counsel for plaintiff. In this court they submit, as questions to be determined: Was there a final order made by the Committee prior to March 1, 1947, dissolving Common School District No. 95, on which the Curative Act (G. S. 1947 Supp. 72-5629) could operate? It will be observed from the record hereinbefore referred to that Common School District No. 95 was disorganized by the Committee on February 19, 1946. The only mistake in that order was the assigning of the territory of Common School District No. 95 to Rural High School Districts Nos. 1 and 2. We pass this, however, since it was not argued in the briefs that this constituted a disorganization of the district.

Common School District No. 95 was disorganized and its territory attached to other common-school districts by the order of the Committee of May 16, unless that order is vitiated by the fact that the secretary, or whoever wrote up the order, made an error by designating the common-school district as No. 98 when it should have been No. 95, and the correction of that error by the chairman of the Committee or by the secretary at his direction.

Counsel for appellant present the question of the authority of one member of the Committee to change the order as first written. They contend that the number of the district was a matter of substance and not of form and that any change in it should have been made by the Committee and not by one member of it only. Authorities are cited to the effect that any board, commission or committee should act as a body. That rule is recognized as being well established.

The only question in the case is whether there was a clerical error which could be corrected by the one who made it, or someone else in authority, without calling the Committee together to act

upon it. While clerical errors have occurred in various instruments and in proceedings of courts, commissions or other administrative bodies in a great variety of circumstances, and have been corrected by various methods (see 11 C. J. 839 and authorities and cross-references set out in the annotation), and the term "clerical error" has been defined by the courts as it pertained to the particular situation under consideration, perhaps as good a general definition as any is found in 14 C. J. S. 1202, where it is said:

"*Clerical error.* An error committed in the performance of clerical work, no matter by whom committed; more specifically, a mistake in copying or writing; a mistake which naturally excludes any idea that its insertion was made in the exercise of any judgment or discretion, or in pursuance of any determination; an error made by a clerk in transcribing, or otherwise, which must be apparent on the face of the record, and capable of being corrected by reference to the record only. . . ."

This definition, insofar as it limits it to the record only, may be more narrow than the courts have used in some instances, but we think it applicable here.

The record before the Committee of February 19 not only used the correct number, "95," of the Common School District in question, but it divided the district by a line fixed and measured throughout by section, township and range numbers of the lines within Common School District No. 95. The order of the Committee of May 16 used the same description of the line dividing the land, which could be only in Common School District No. 95. We were told in the argument, and it is not controverted, that District No. 98 lies in an entirely different part of the county, and in the order made on February 19 that district was disorganized and all of its territory attached to District No. 115. More than that, the order of the Committee made on May 16 was specifically for the purpose of attaching the territory described therein to common-school districts instead of to rural high-school districts. This again identified the particular area being acted upon. It made "no other changes in the original Final Order, dated February 19, 1946." What the Committee was doing on May 16 was correcting one error made on February 19, which error was that the territory of Common School District No. 95 was assigned to rural high-school districts instead of to common-school districts. So it seems reasonably clear from the record that the Committee on May 16 was dealing only with the territory of Common School District No. 95 and could not have been dealing with the territory of Common School

District No. 98. From this it seems clear that the secretary of the Committee, assuming he wrote up the order of May 16 and made the mistake in the number of the district, could have corrected his mistake without consulting anyone else, and certainly he could do it upon the advice or recommendation of the chairman of the Committee.

Able counsel have discussed the matter from various viewpoints and cited numerous authorities, some of which are not very close in point. No good purpose would be served in extending the discussion more fully. In passing the so-called "Curative Act" the legislature contemplated that there might be many irregularities in the proceedings of the Committee and provided none of them should be taken into account if the final order had been made prior to March 1, 1947. This statute is quite sweeping in its terms and application. It has been held valid in *State, ex rel., v. School District,* 163 Kan. 650, 185 P. 2d 677, and *Rempel v. Kobs,* 166 Kan. 38, 199 P. 2d 194.

We think the trial court correctly decided the case and that its decision should be affirmed. It is so ordered.

THIELE, PARKER, ARN, JJ., concur in the result.

WEDELL, J. (dissenting): In my opinion this appeal is clearly too late under well recognized decisions of this court. Only a question of law was involved in the decision of the trial court and that is the sole question here as will presently appear.

I, therefore, cannot agree with syllabus ¶ 1, (2), for the reason it does not apply to this case. While it is true the motion for a new trial included the ground the decision was contrary to the evidence nothing was presented to the trial court on that motion except a pure question of law. The majority opinion plainly recognizes that fact. It states:

"The only question in the case is whether there was a clerical error which could be corrected by the one who made it, or someone else in authority, without calling the Committee together to act upon it."

We have so often ruled that a motion for a new trial is neither necessary nor proper where only questions of law are involved that citation of cases on the point is wholly unnecessary. This is a rule with which trial lawyers are thoroughly familiar. Here no trial errors such as the alleged erroneous exclusion or admission of evidence or erroneous instructions, or any other trial error, are in-

volved. The record shows briefs were submitted to the trial court on the single legal question and the decision thereon was rendered in open court on February 9, 1948, as follows:

"And Now, on the 9th day of February, 1948, the same being a regular day of the February Term of this Court for the year 1948, this cause comes on for decision by the Court; and neither party having requested written findings of fact and conclusions of law, the Court *finds generally* for the defendants upon all issues in this action, and *announces in open court its decision* that all relief prayed for in plaintiff's Petition, including the injunction sought therein, should be denied; and *the Court further finds* that the defendants should have and recover judgment for their costs incurred in the defense of this action, taxed by the Clerk of this Court at $50.15." (Our italics.)

It will be observed there is no indication in the foregoing language indicating an intention to make findings or a decision in the future. The language is clearly evidence of present action. The court says it "finds" and "announces in open court its decision." In full recognition of the fact the decision was actually rendered February 9, 1948, appellant, two days thereafter, filed its motion for a new trial. The trial court did not rule on that motion until September 16, 1948, more than seven months after its decision had been made. The appeal was not perfected until October 9, 1948. Furthermore, the notice of appeal plainly states the appeal is from all orders and rulings and from" . . . *the judgment* of the Court entered on *the 9th day of February, 1948."* (Emphais supplied.)

Of course, there was also an appeal from the judgment of September 16, 1948, overruling the motion for a new trial. It will thus be seen appellant does not contend the rendering of the judgment was delayed until September 16, 1948, the date the journal entry was filed. The journal entry of judgment merely constitutes a formal record of the judgment. It is not the judgment itself. The time for perfecting the appeal is computed from the date of judgment and not from the date of filing the journal entry of judgment. (*Gates v. Gates,* 160 Kan. 428, 163 P. 2d 395.) Moreover, appellant filed no motion for a new trial after September 16, 1948. We, therefore, have a decision of the trial court rendered February 9, 1948, based solely on a question of law and no appeal therefrom until October 9, 1948. Manifestly, that was too late under our repeated decision. (G. S. 1947 Supp. 60-3309 and cases collected thereunder.)

Appellant does not deny but with commendable frankness admits in his brief the appeal was taken more than two months "after the court's decision on the merits of the case." Appellant, however, relies on a portion of certain language employed in *McCarty v. McCarty*, 163 Kan. 427, 182 P. 2d 881, as follows:

"We are first confronted with appellees' motion to dismiss the appeal because it was not filed in time under our statute. (G. S. 1945 Supp., 60-3309.) The trial was had and the court's decision rendered on September 3, 1946. The motion for a new trial was heard and overruled on October 9, 1946, and the notice of appeal was filed on November 7, 1946. This was more than two months after the decision on the merits but within that time after the ruling on the motion for a new trial. In such a situation the rule is that if the motion for a new trial raises nothing more than purely legal questions involved in the decision the appeal is too late (*Palmer v. Helmer*, 159 Kan. 647, 157 P. 2d 531), but if it pertains to alleged trial errors, such as rulings on the admission of evidence, or other rulings of the court pertaining to the trial itself, *or requires the consideration of all the evidence*, the competency of witnesses and the weighing of the testimony, the ruling of the trial court upon the motion for a new trial is regarded as a ruling upon those questions, from which an appeal can be taken. (*Phillipson v. Watson*, 149 Kan. 395, 87 P. 2d 567.) (Our italics.) (p. 431.)

The language relied on is the italicized portion of the foregoing statement. To construe that language as meaning a motion for a new trial is proper and extends the time for perfecting an appeal where, as here, solely a question of law is involved is not an accurate interpretation of such language and is inconsistent with our numerous decisions.

PRICE, J., concurs in the above dissent.