No. 35,231

CLARENCE V. ELLIOTT, *Appellee,* v. MABEL ELLIOTT et al., *Appellants.*

No. 35,201

NELLIE MABEL ELLIOTT, *Appellant,* v. CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION, W. O. MARNEY and BESSIE MARNEY, *Appellees.*

(114 P. 2d 823)

Opinion filed July 5, 1941.

*Clyde P. Cowgill,* of Topeka, for the appellants.

*Oscar Raines, Ralph F. Glenn, Wendell B. Garlinghouse* and *Warren W. Shaw,* all of Topeka, for the appellees.

The opinion of the court was delivered by

ALLEN, J.: The actions were not consolidated, but for the convenience of the court and the litigants, were argued together. The actions concern certain residence property in Topeka. The generating source of the litigation was the marital difficulties of Mabel Elliott and Clarence V. Elliott. From the mass of details set forth in the abstract, and argued in the briefs, certain essential facts emerge.

On February 18, 1931, the record title to the property was in Mabel Elliott. On that date Mabel Elliott brought an action for divorce against Clarence V. Elliott. The answer of the defendant contained a general denial, and a cross petition in which he alleged grounds for divorce against the plaintiff. On June 18, 1931, a decree of divorce was granted to the defendant upon his cross petition. In the decree, the custody of the minor children was awarded the plaintiff, and a division of the property was made. As her share of the property belonging to plaintiff and defendant, the court awarded to the plaintiff, Mabel Elliott, the household goods, the automobile and certain other items of personal property. As his share of the property belonging to the plaintiff and defendant, the court awarded to the defendant, Clarence V. Elliott, the residence property now in dispute.

On September 18, 1931, Clarence V. Elliott conveyed the property to his former wife, Mabel Elliott.

On November 20, 1931, Clarence V. Elliott brought an action against Mabel Elliott to set aside and cancel the deed dated September 14, 1931. This case was tried on January 12, 1932. At the close of the evidence the court rendered judgment, and the following entry was made on the trial docket: "Judgment for plf. cancelling deed as per J. E." As will be seen, the journal entry of the judgment was not spread of record at the time the judgment was rendered.

On March 2, 1932, Clarence V. Elliott, by warranty deed, conveyed the property to the Lakewood Investment Company, and on May 9, 1932, the Lakewood Investment Company conveyed the property to the Capitol Building and Loan Association. It is admitted that the corporate name of the Capitol Building and Loan Association has been changed to Capitol Federal Savings and Loan

Association. The defendants, W. O. Marney and Bessie Marney, are tenants of the loan association.

We now consider the appeal in case No. 35,231.

As above stated, on September 14, 1931, Clarence V. Elliott conveyed the property in question to his former wife, and thereafter brought an action to set aside that conveyance. While judgment was entered in the cause, and an entry made on the trial docket "Judgment for plf. cancelling deed as per J. E.," the journal entry did not recite the actual order and judgment made by the court. The proceedings in case No. 35,231 was to determine the judgment actually rendered in that cause, and to enter the same *nunc pro tunc*. We quote from order of the court made on January 21, 1941, approving the journal entry:

"Now on this 21st day of January, 1941, comes on for hearing the matter of settling the journal entry covering the proceedings had in this case on January 21, 1932. The court had before it the journal entry of judgment as approved in writing by Tinkham Veale, attorney of record herein for plaintiff, and by Charles Rooney, attorney of record herein for the defendant, both of said attorneys for the respective parties at the time of the trial of this case. Clyde P. Cowgill appeared and stated he now represented Mabel Elliott in this and in another proceeding in the third division of this court, and objected to the court signing the journal entry as approved by Tinkham Veale and Charles Rooney, on the ground that said journal entry did not recite the actual order and judgment made by the court at the trial of this case, and other reasons appearing in the record made this date.

"The court thereupon stated that he made a full set of notes covering the proceedings which occurred at the trial of this case, and that he had also examined the notes of the court reporter covering the trial of this case, and that Mr. Veale and Mr. Rooney had also been to his office and discussed the proceedings with him, and that said journal entry correctly stated the order and judgment of the court.

"It is therefore by the court ordered, that the journal entry of judgment now submitted in this case covering the trial of this case on January 21, 1932, and approved by Tinkham Veale as attorney for the plaintiff and by Charles Rooney as attorney for the defendant, which journal entry is hereto attached, and made a part of the records of this case.

"JOURNAL ENTRY.

"Now on this 21st day of January, 1932, the same being one of the judicial of the regular January, 1932, term of said court, the above-entitled case comes regularly on for trial to the court, a jury being waived. Plaintiff appeared in person and by Tinkham Veale, his attorney, and defendant appeared in person and by Charles Rooney, her attorney.

"Thereupon the parties announced themselves ready for trial and plaintiff introduced his evidence and rested and defendant then introduced her evi-

dence and rested, after which oral arguments were made to the court by counsel for the respective parties.

"After considering the evidence and the argument of counsel, and being fully advised in the premises, the court finds that said defendant has violated and broken the terms of her agreement with said plaintiff under which he executed the deed involved in this case, and that plaintiff is entitled to judgment against said defendant as prayed for in his petition herein setting aside said deed and barring said defendant from claiming any right, title or interest in or to said property.

"It is therefore by the court considered, ordered, adjudged and decreed that the deed which plaintiff executed to defendant under date of September 14, 1931, and recorded in volume 648 on page 129 in the office of the register of deeds of Shawnee county, Kansas, covering the following described property, to wit (description of property) should be, and the same hereby is, canceled and set aside, and that said defendant should be barred from claiming any right, title or interest in or to said property."

The rule announced by this court in *Aydelotte v. Brittain & Co.*, 29 Kan. 98, is in point:

"On the hearing of a motion for a *nunc pro tunc* entry, the question is, what order was in fact made at the time by the trial judge? And upon such question the minute on the judge's docket and the testimony of the trial judge are ordinarily controlling." (Syl. ¶ 1.)

In *Victory Life Ins. Co. v. Freeman*, 145 Kan. 296, 299, 65 P. 2d 559, it was stated:

". . . The distinction is between the judgment itself and the mere evidence of the judgment. A judgment is the final determination of the rights of the parties in an action. (G. S. 1935, 60-3101.) The judgment is the decision of the court. It may or may not be correctly spread of record in the journal entry. A judgment itself is beyond the power of the court to amend or correct after the expiration of the term of court at which it is rendered. If, however, the journal entry does not correctly show the judgment as rendered by the court—that is, if by clerical error or inadvertence the record does not speak the truth, then the court may by a *nunc pro tunc* order correct the same."

In *Christisen v. Bartlett*, 73 Kan. 401, 84 Pac. 530, this court said:

"A district court has the power to correct the entry of a judgment so as to cause it to speak the truth after the expiration of the term at which it was rendered, and upon the personal knowledge of the judge of what took place in court at the time of its rendition." (Syl. ¶ 1.)

See, also, *Schneider v. Schneider*, 147 Kan. 621, 78 P. 2d 16; *Morton v. Morton*, 149 Kan. 77, 86 P. 2d 486.

From the record it appears that the judge of the district court before whom the action to set aside and cancel the deed was tried, Hon. George A. Kline, took full shorthand notes of the proceedings. On

the motion for *nunc pro tunc* order, the district judge had before him the evidence contained in the trial docket entered at the time that judgment was rendered in favor of plaintiff, the shorthand notes of the proceedings taken by himself, the notes of the court reporter and the testimony of the attorneys for both the plaintiff and the defendant. We think the evidence to sustain order of the court entering the judgment *nunc pro tunc* was full and satisfactory.

We next consider the appeal in case No. 35,201. As stated above, the action is in ejectment to recover the real estate awarded to the husband in the divorce decree on June 18, 1931. The petition alleges the defendants have been in possession since May 11, 1932.

In the decree of divorce there was a settlement of. the property rights of the parties. The journal entry recited:

"Now, on this 18th day of June, 1931, the same being one of the regular term days of the April, 1931, term of the district court of Shawnee county, Kansas, comes regularly on for hearing the above-entitled action. The plaintiff appeared in person and by her attorneys, Dennis Madden, B. J. Lempenau and W. E. Atchison, and the defendant appeared in person and by his attorney, Tinkham Veale, and both parties announced themselves ready for trial.

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The plaintiff offered no evidence in said action, and defendant offered certain evidence in support of his answer, cross petition and amended answer thereto, and the court being fully advised in the premises, finds that the allegations of said answer and amended answer are true, and that defendant should have a divorce against the plaintiff on the grounds of extreme cruelty and gross neglect of duty.

"The court further finds that plaintiff should have set aside to her as her share of the property of plaintiff and defendant, all the household goods now in her possession, except the several items of personal property hereinafter allowed to defendant, one 1927 Ford sedan, all of said property to be free and clear of any right, title and interest of the defendant, and that the defendant should have as his share of the property of plaintiff and defendant, any equity in the real estate now in possession of plaintiff and described as follows: The west 100 feet of tract 72, and the west 100 feet of tract 73, and known as house number 410 Burgess avenue, Topeka, Kansas; one Colt revolver 3.80, one Indian blanket, one bedspread (given to defendant by Mrs. Roe), one rocking chair (given to defendant by Harry Wilson), all insurance policies on the life of defendant, family photos, including the children of plaintiff and defendant, all tools and equipment of the defendant used in his business of painting and papering, all of said property being free and clear of any right, title or interest of the plaintiff."

Judgment was entered in accordance with the findings. No appeal was taken from the judgment and decree.

Plaintiff contends the judgment of the court in awarding the real estate to the husband in the divorce action is void, and therefore may be set aside at any time. The argument runs thus: On February 11, 1926, the real estate was owned by one Patrick Des Georges, who on that date conveyed the same to Mabel Elliott. Our statute, G. S. 1935, 23-201, provides that any real property which shall come to any married woman shall remain her separate property notwithstanding her marriage. Section 60-1511 provides that if the divorce be granted by reason of the fault or aggression of the wife, the court shall order restoration to her of "the whole of her property, lands, tenements and hereditaments owned by her before, or by her separately acquired after such marriage." It is asserted that the property was acquired by the separate earnings of the plaintiff, and the decree of the court in giving the separate real estate of the wife to the husband was void, and that plaintiff is not concluded by the decree.

The fallacy in the argument is apparent. In the first place, the statute (60-1511) does not state that all the real estate, to which the wife has the record title, shall be restored to her, but that the property, lands, etc., "owned by her" shall be awarded to her.

The entire argument is predicated upon the assumption that because the "title" was in the plaintiff at the time of the divorce, she had ownership of the property. We quote from Restatement of Trusts, § 2, *Comment d.*

"The term 'owner' is used in the restatement of this subject to indicate a person in whom one or more interests are vested for his own benefit. The person in whom the interests are vested has 'title' to the interests whether he holds them for his own benefit or for the benefit of another. Thus the term 'title,' unlike 'ownership,' is a colorless word; to say without more that a person has title to certain property does not indicate whether he holds such property for his own benefit or as trustee."

The distinction between the mere legal title to property and the beneficial ownership is recognized in section 60-1511, which recites:

". . . And to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties respectively as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof."

In construing this provision of the statute, the court in *Raney v. Matney*, 128 Kan. 426, 278 Pac. 26, stated:

"The statute clearly contemplates that in adjusting property rights the divorce court may inquire into and determine property origins. In this instance the court made an investigation and found the land was acquired by the husband and wife out of their joint earnings after marriage. The statute provides that no matter in which party title stands the court may give property so acquired to either one. The question before the court was whether this provision becomes inoperative if, after joint acquisition, the husband deeds to the wife. Prima facie, the distinction in the statute is between property originally acquired separately by one spouse, and property originally acquired jointly by both, and when divorce is granted for fault of the wife, it is not material whether title of property originally acquired with joint funds stands in one or the other, or both. In any event the question before the court was one of statutory interpretation. Manifestly the court had power to make a decision, and whether the decision was sound or unsound it was not void for want of jurisdiction. If the judgment was erroneous it could be corrected only by appeal. No appeal was taken, and the judgment is a final adjudication both as to marital status and property interests of the parties." (p. 427.)

The question of the ownership of the property was an issue to be determined in the divorce action. The decree recited that the defendant was to have "as his share of the property of plaintiff and defendant" the real estate in question.

In the action by Clarence V. Elliott to cancel the deed made to his former wife, the issue of the ownership of the property in question was again before the court. By the judgment of January 21, 1932, the issue was resolved in favor of the plaintiff in that action.

Public policy requires that there should be an end to litigation. As stated by this court in *Smith v. Auld*, 31 Kan. 262, 266, 1 Pac. 626: "The whole philosophy of the doctrine of *res judicata* is summed up in the simple statement that a matter once decided is finally decided; and all the learning that has been bestowed, and all the rules that have been laid down have been for the purpose of enforcing that one proposition." The plaintiff was finally concluded by the judgments so rendered.

Moreover, the plaintiff, having accepted the benefits of the judgment, will not be permitted to question the validity of the judgment. (*Morton v. Morton*, 149 Kan. 77, 81, 86 P. 2d 486, and cases cited.)

Finding no error in the records presented, the judgments in cases No. 35,231 and 35,201 are affirmed.