NOT DESIGNATED FOR PUBLICATION

No. 122,595

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

STEVEN D. DICKSON II,
*Appellant*,

and

LUCYL M. DICKSON,
*Appellee*.

MEMORANDUM OPINION

Appeal from Geary District Court; COURTNEY D. BOEHM, judge. Opinion filed January 8, 2021. Affirmed.

*Autumn L. Fox*, of Jacobson & Fox, L.L.C., of Manhattan, for appellant.

*Phon Sounakhen* and *Lowell C. Paul*, of Kansas Legal Services, for appellee.

Before GREEN, P.J., MALONE, J., and MCANANY, S.J.

PER CURIAM: In this appeal we consider issues regarding the primary residential placement and parenting time for the two minor children of Steven D. Dickson II and Lucyl M. Dickson. Steven is active duty military and an Army helicopter pilot. He and Lucyl met in Korea and were married in December 2008.

In 2011 Steven was stationed at Fort Riley, and the parties' son was born there.

In July 2012 Steven filed for divorce. The district court entered ex parte temporary orders granting him primary residential placement of the parties' son. This order was in

effect from July 2012 until Steven dismissed the divorce action in April 2013. The parties were unsuccessful in their attempt to reconcile their marriage, so Steven filed for divorce a second time in May 2013. The parties were divorced in February 2014, and their son was placed with Lucyl. Steven's appeal of the court's placement order was unsuccessful.

Shortly before August 2016 Steven and Lucyl reconciled. Steven deployed to Afghanistan in August 2016, and Lucyl stayed in Junction City with their son until Steven returned in April 2017.

The parties remarried in October 2017 and their second child, a daughter, was born in Junction City in February 2018. Less than a month later, in March 2018, Steven deployed to Saudi Arabia, and Lucyl remained in Junction City with the two children. Steven came home on leave in September and December 2018. His tour ended in April 2019, and he returned to Lucyl and the children in Junction City.

In May 2019, a month after returning from Saudi Arabia, Steven filed his third divorce action against Lucyl. Steven was about to move to Tennessee because he had orders to be stationed at Fort Campbell, Kentucky. Accordingly, Steven requested, and the district court issued, an ex parte order for joint custody of the children with Lucyl denominated the primary residential parent. The order also directed that Steven was to have parenting time with the children in Tennessee for that summer from late May to early August.

In her answer to Steven's petition, Lucyl requested that the court grant the parties joint custody of the children with Lucyl denominated the primary residential parent. She proposed that Steven have parenting time on alternating holidays. Steven agreed that the court should order joint custody, but he sought primary residential placement of the children for himself. He proposed that Lucyl be allowed alternating holiday parenting time and summer parenting time for the entire summer.

The contested issues of primary residential placement, parenting time, child support, and spousal maintenance were tried to the court on November 14, 2019. At the end of the proceedings, the court took the matter under advisement and rescheduled the matter for December 17, 2019, for the court's ruling.

On December 17, the court announced its rulings and issued an eight-page order memorializing the rulings. The order was filed that same day. The court ordered that Lucyl be the primary residential placement for the children, subject to 30 days of uninterrupted summer parenting time for Steven along with spring break and Thanksgiving break in odd-numbered years and winter break in even-numbered years. The court also found the jurisdictional bases for a divorce, found that the parties were incompatible, and stated: "The Divorce is granted effective today." The court left open the child support issue. If the parties were unable to agree on child support, they were to submit their proposed child support worksheets to the court before December 27, 2019.

On December 30, 2019, after the parties submitted their child support worksheets, the court issued its final ruling on child support. That same day, the court also filed a decree of divorce that more formally memorialized the proceedings that were held on December 17 regarding the divorce itself. The decree stated the divorce "shall become final upon filing of the same."

On January 3, 2020, Steven filed his notice of appeal challenging the court's December 17, 2019 orders on residential placement of the children and Steven's parenting time.

Then, on January 16, 2020, Steven moved to alter or amend the court's orders for primary placement of the children and parenting time. He argued that the court's findings were inadequate, the court's orders were not in the best interests of the children, and the

orders were not supported by the evidence. He requested a hearing pursuant to Kansas Supreme Court Rule 133(c) (2020 Kan. S. Ct. R. 199).

On January 23, 2020, the district court denied Steven's motion to alter or amend without a hearing, finding that pursuant to Rule 133(c)(1) no oral argument was necessary because it would not materially aid the court in ruling on Steven's motion.

On February 14, 2020, Steven again filed his notice of appeal. This appeal followed.

*Jurisdiction*

Lucyl challenges whether this court has jurisdiction to consider Steven's claims on appeal. She argues:  (1) Steven needed to make a timely objection to the district court's findings to preserve the issues for appeal; (2) a timely motion to alter or amend would have preserved Steven's issues for appeal; (3) but Steven filed his motion to alter or amend on January 16, 2020; (4) and the motion to alter or amend was untimely because it was filed more than 28 days after the court's December 17, 2019 order; (5) thus, Steven failed to make a timely objection to the district court's findings regarding primary placement of the children and parenting time in order to preserve these issues for appeal; and (6) this court now has no jurisdiction to consider them.

Whether jurisdiction exists is a question of law over which our scope of review is unlimited. *Kaelter v. Sokol*, 301 Kan. 247, Syl. ¶ 1, 340 P.3d 1210 (2015).

When the district court's findings are objectionable on grounds other than sufficiency of the evidence, the aggrieved party must object at the trial court level to preserve the issue for appeal. *In re Marriage of Bradley*, 258 Kan. 39, 50, 899 P.2d 471 (1995). A timely motion to alter or amend pursuant to K.S.A. 2019 Supp. 60-259(f)

4

satisfies this requirement. See K.S.A. 2019 Supp. 60-252(b). Here, if Steven's motion to alter or amend was untimely, we do not have jurisdiction to review any issues related to Steven's motion which are raised in this appeal. See *Loscher v. Hudson*, 39 Kan. App. 2d 417, 435, 182 P.3d 25 (2008).

A motion to alter or amend must be filed no later than 28 days after the district court enters its judgment. K.S.A. 2019 Supp. 60-259(f). A "judgment" is the district court's "'final determinations of the rights of the parties in an action.'" *Elliott v. Elliott*, 154 Kan. 145, 148, 114 P.2d 823 (1941). A judgment in a divorce action is final—and the time deadline to appeal begins to run—once the court rules on all the issues in the case. This is true even if the district court first grants a bifurcated divorce decree. *McCain v. McCain*, 219 Kan. 780, Syl. ¶ 2, 549 P.2d 896 (1976); *Matter of Marriage of Thrailkill*, 57 Kan. App. 2d 244, 255, 452 P.3d 392 (2019) (a divorce action presents a single legal claim between the parties, and a bifurcated decree that resolves some aspects of the claim is not a final judgment).

At the November 2019 hearing, the court received testimony on primary residential placement of the children, parenting time, child support, spousal maintenance, and various related sub-issues. On December 17, 2019, the court issued and filed its order on custody, primary residential placement of the children, parenting time, the mediation of disputes, parental telephone access to the children, medical insurance coverage, access to school records, and spousal maintenance. The court also granted a divorce effective that date. The court left undecided the issue of child support, which the court reserved for a later decision if not otherwise resolved by an agreement of the parties.

On December 30, 2019, having received the child support worksheets of both parties, the court entered an order for child support, the last remaining unresolved issue in the case. The court also filed a more formal divorce decree that memorialized the December 17, 2019 proceedings and divided between the parties their two automobiles

(an issue apparently heretofore unresolved), stating that the decree "shall become final upon filing of the same with the Clerk."

Applying *McCain* and *Thrailkill*, it is apparent that this matter became final when the court issued its order on the last remaining issue in the case—child support—on December 30, 2019. At that time the 28-day time for filing a motion to alter or amend the judgment began to run. Steven had until January 27, 2020, to file his motion to alter or amend. He timely filed his motion January 16, 2020. The motion challenged the district court's orders regarding primary residential placement of the children and summer parenting time, the matters at issue in this appeal. The district court had jurisdiction to consider Steven's motion, and we have jurisdiction to consider on appeal the matters Steven addressed in his motion.

*Primary Residential Placement of the Children*

Steven contends that the district court erred in granting Lucyl primary residential placement of the children. He also argues that in reaching its decision on placement of the children (1) the court failed to make explicit findings under K.S.A. 2019 Supp. 23-3203(a) and (2) there was insufficient evidence to support the district court's findings.

Before reaching the ultimate issue of the propriety of the district court's decision on residential placement of the children, we will take up Steven's contentions that the district court erred in making the findings that underpin its decision.

*The Form of the District Court's Findings*

Steven argues that the district court failed to make explicit findings with respect to each of the relevant factors in K.S.A. 2019 Supp. 23-3203 in deciding residential

6

placement of the children and his parenting time with them. Steven preserved this issue in his motion to alter or amend.

This issue turns on statutory construction, which is an issue of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

K.S.A. 2019 Supp. 23-3201 requires that a decision regarding the residency of a child be made "in accordance with the best interests of the child." K.S.A. 2019 Supp. 23-3203(a) provides that in determining the residency of a child, "the court shall consider all relevant factors, including, but not limited to" the 18 statutory factors listed there.

Contrary to Steven's contention, we find no statutory requirement that the court make explicit findings regarding each factor and we find no support in the cases for this claimed requirement. Here, the district court considered all 18 statutory factors, though it determined that a number of them were not relevant to the issues before it. The district court stated in its order:

> "Where there is a contest between parents regarding residency and parenting time the Court must examine and decide these issues based on what is in the best interests of the children. *The Court has also reviewed K.S.A. 23-3203 and the factors to be considered* by the Court in determination of residency and parenting time of the children." (Emphasis added.)

The district court did not err in failing to make explicit findings with respect to each of the relevant factors in K.S.A. 2019 Supp. 23-3203.

Steven also claims that many of the court's findings with respect to the enumerated statutory factors were merely "observations" or "statements" by the court about the evidence and not valid findings. It is true that some findings are devoted, at least in part,

to the court's admonitions to the parties about how they should conduct themselves, not to findings of fact based on the evidence. But that does not take away from the court's findings that are supported by the evidence introduced at trial.

K.S.A. 2019 Supp. 60-252(a)(1) provides that following a bench trial the trial judge "must find the facts specially and state its conclusions of law separately." As stated in *Mies v. Mies*, 217 Kan. 269, Syl. ¶ 2, 535 P.2d 432 (1975):

> "The findings required by K.S.A. 60-252(a) should be sufficient to resolve the issues, and in addition they should be adequate to advise the parties, as well as the appellate court, of the reasons for the decision and the standards applied by the court which governed its determination and persuaded it to arrive at the decision."

Under K.S.A. 2019 Supp. 60-252(a)(4), "[a] party may later question the sufficiency of the evidence supporting the findings."

Steven argues that in considering a number of the K.S.A. 2019 Supp. 23-3203(a) statutory factors the district court failed in its findings to recognize and make note of the evidence that favored him. But K.S.A. 2019 Supp. 60-252(a)(4) makes clear the distinction between evidence and findings. Fact-finding is not simply a recitation of the evidence introduced at trial. The trial court makes findings of fact *from* the evidence. In doing so, the trial court need not detail all the evidence pros and cons on the matter at issue. When a party believes a finding is erroneous, that party may challenge the validity of the finding in posttrial proceedings to determine whether it is supported by substantial, competent evidence presented at trial.

A decision that sets forth the trial court's findings with respect to the ultimate controlling facts does not violate K.S.A. 2019 Supp. 60-252(a)(1) so long as they are sufficient to afford meaningful appellate review. We conclude that the district court's

order before us adequately expresses the court's findings for us to achieve the ultimate objective of a meaningful appellate review.

*The Sufficiency of the Evidence Supporting the District Court's Findings*

Steven argues that there was insufficient evidence to support several of the district court's findings. When considering the sufficiency of the evidence underlying the district court's findings regarding placement of the children, we view the evidence in the light favoring the prevailing party below. *In re Marriage of Bahlmann*, 56 Kan. App. 2d 901, 903, 440 P.3d 597 (2019). In doing so, we do not reweigh the evidence, evaluate the credibility of the witnesses, or redetermine questions of fact. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 705, 229 P.3d 1187 (2010).

The findings that Steven challenges relate to the factors found in subsections (1), (5), (7), (8), (9), (10), (11), (12), and (14) of K.S.A. 2019 Supp. 23-3203(a). We will take up each of these factors in turn.

*(1) Each parent's role and involvement with the minor children before and after separation*

The district court found that the evidence presented at trial established that Lucyl had been the children's primary caregiver. Steven argues that the district court completely ignored the role he has played in the children's lives.

Regarding his son, the older child, Steven's position is that the district court should have resolved this factor in his favor because of the evidence at trial regarding the substantial time he spent with his son. Steven testified that for the first six and a half years of his son's life—from September 2011 through March 2018—Steven lived in the Junction City area and was present to coparent his son with Lucyl. He either had

temporary primary residential custody of their son for a number of months during prior divorce proceedings, lived with Lucyl and coparented their son, or he and Lucyl were separated but living in the same area so he could coparent their son during that period. He also had court-ordered extended summer parenting time with their son.

But for 22 of the 33 months between August 2016 and April 2019, Steven was deployed overseas while their son remained with Lucyl in Junction City. For nine months during this time period—from August 2016 to April 2017—Steven was deployed to Afghanistan and could not come home on leave. Their son remained with Lucyl in Junction City during this time. In March 2018, Steven was deployed to Saudi Arabia. While he was able to return home for extended leave twice in 2018, he did not return from his deployment until April 2019. Their son remained with Lucyl in Junction City during this deployment. After Steven returned from Saudi Arabia, he soon moved to Tennessee because of his transfer to Fort Campbell, Kentucky. Their son remained behind with Lucyl in Junction City.

Regarding the parties' daughter, Steven was not present for much of her life before commencement of this action. She was born in late February 2018—days before Steven was deployed to Saudi Arabia. During Steven's 13-month deployment, she remained in Junction City with Lucyl. During this time, Steven only came home on leave twice. After his deployment was over, he soon moved to Tennessee and his daughter remained with Lucyl in Junction City.

Viewing the evidence in the light favoring Lucyl, the prevailing party, we find substantial evidence to support the district court's finding that Lucyl had been the children's primary caregiver.

*(5) The emotional and physical needs of the children*

The district court found that the evidence presented at trial established that both children loved their parents, that the children seem "very bonded" to Lucyl because she is their primary caregiver, and that Steven does make attempts to grow his relationship with the children.

Steven argues that the district court ignored his ability to address the children's physical and emotional needs. He points to evidence that Lucyl neglected to complete a plan of dental treatments for their son. He argues that because of Lucyl's work and school schedule, she spends only three and a half hours each day with the children. He argues that this "affects her ability to address her emotional relationship" with the children. He contends that he would be the better parent for the children to live with because of Lucyl's schedule and the fact that his parents could help care for the children when he was unavailable.

Lucyl was a caregiver for seniors and worked from 9 p.m. to 6 a.m. five days a week. Her plan was to become a dental technician, which would involve daytime work. To that end, she attended school from 7:30 a.m. to 4:30 p.m. but testified that she planned to complete her course of study in March 2020, a few months after the trial. Working as a dental technician presumably is daytime work. While Lucyl worked overnight shifts, she provided appropriate care for the children. While she was in class during the day, their son was in school and she provided care for their daughter. Lucyl was home in the morning to get the children ready for school and daycare, and she was home for part of the evening with the children before going to work.

When the children were with Steven during the summer of 2019, he also had to find daycare for the children because he worked during the day.

11

Viewing the evidence in the light favoring Lucyl, the prevailing party, we find substantial evidence to support the district court's finding regarding this factor.

*(7) The children's adjustment to their home, school, and community*

The district court found that both children have lived in Kansas since they were born, that they are a part of the Junction City community, and that the parties' son is connected to his school and friends in Junction City.

Steven argues that the district court ignored the parties' daughter in making this finding. Of course, she was less than two years old at the time of trial. Nevertheless, she—like her brother—was born in Kansas and has lived in Junction City all her life. With respect to the older child, he has attended only one elementary school in Junction City. Lucyl presented evidence that he is a good student, is well liked in school, has bonded with a group of friends, has participated in extracurricular activities in the community, and would be negatively affected by having to move to a new school— particularly in the middle of the school year.

Steven argues that Junction City is a "transient community" due to its proximity to Fort Riley. But Clarksville, where Steven resides, is close to Fort Campbell and is a similar community in that regard. Just as Lucyl may have friends in Junction City who may have to leave because they are deployed elsewhere, Steven is in the same situation in Clarksville.

Substantial evidence, viewed in the light favoring Lucyl, supports this finding, though with respect to the parties' daughter it does not have a great deal of relevance.

*(8) The willingness and ability of each parent to respect and appreciate the bond
between the children and the other parent and to allow for a continuing
relationship between the children and the other parent*

The district court found that Steven was focused at trial primarily on attacking Lucyl, and that he put little attention on the children and their best interests. When Steven filed this divorce action he sought—and the district court entered—temporary orders granting Lucyl primary residential placement of the children in Junction City because he had been transferred to Fort Campbell and soon would be moving to Tennessee. At trial, it was Steven who had to upend the status quo in order to be named the primary residential parent. He attempted to do that by presenting evidence that placed Lucyl in an unfavorable light in an attempt to convince the court that he was the better parent for placement of the children. There is evidence to support the district court's characterization of Steven's trial tactic, though we fail to see how this finding supports any of the statutory factors the court is to consider.

The district court also expressed concern about the need for both parents "to put aside their ill feelings for each other and focus on being the best co-parent that they can be to their children." To the extent that this is an implicit finding that both parents have ill feelings that interfere with their children's relationship with the other parent, it obviously cuts both ways. Thus, while there is evidentiary support for this finding, we do not view this finding as support for either party when it comes to the issues to be resolved in this case.

*(9) Evidence of domestic abuse*

The district court made no meaningful finding with respect to this factor. It simply stated: "Mom did present her allegations against the father regarding his control over her and the household." We find no evidence that would constitute domestic abuse. There certainly is no evidence of conduct that would fall into the category of abuse involving

spouses under K.S.A. 2019 Supp. 60-3102. We find no evidence that would support any finding on this statutory factor.

> ### (10) The ability of the parties to communicate, cooperate, and manage parental duties

The district court admonished the parties on their need to communicate with one another and "to put their children at the forefront." This is not a finding of fact that supports the district court's residential placement decision.

But the court did cite two events from the record that related to this factor. The first event was Steven's conduct in August 2019 when he returned the children to Junction City following his summer parenting time. The second event was Steven's conduct immediately after the trial when the parties were attempting to establish a schedule for the upcoming Thanksgiving holiday.

We need not recount the conflicting evidence regarding these events. But viewed in the light favoring Lucyl, there is substantial evidence to support the district court's finding that these two events demonstrate Steven's lack of cooperation with Lucyl on parenting issues.

> ### (11) The school activity schedule of the children

The district court found: "Both children are young and do not yet have much of a school activity schedule." It is unclear why Steven objects to this finding since he admits that his daughter is too young for school and, while his son is involved in soccer and boy scouts, neither of these is a school activity. There is substantial evidence to support this finding.

14

*(12)    The work schedule of the parties*

The district court found that both parties work and that both parties "presented evidence regarding the care for their children when they work." The fact that both parties work is not contested. Nor is the fact that they both had to arrange for childcare during their working hours. In simply noting that the parties presented their childcare evidence, it appears that the court did not find that the evidence presented at trial regarding childcare favored one party or the other. The finding that both parties work and that both parties presented evidence about daycare is supported by evidence in the record, but this finding favors neither party. There is no finding that one of either parties' daycare arrangements is more suitable than those of the other party.

*(14)    The location of the children's school*

The district court found that the parties' daughter is not in school and that their son "would stay in his current school if he resides primarily with [Lucyl]." There is substantial evidence to support this finding.

Steven claims the court failed to note where his son would go to school if he resided with Steven. He cites no evidence in the record regarding where his son would go to school if he resided in Tennessee. He simply cites to his motion to alter or amend in which he recites the court's finding and states:  "This is a finding of sorts but does not address the evidence presented as to where [the son] would go to school if he resides with [Steven]."

*The District Court's Ruling on Primary Residential Placement of the Children*

Having stated its findings of facts, the district court stated: "Therefore, based on the evidence before the court and weighing the statutory factors the Court is ordering that Mother shall have primary residential custody."

We apply the abuse of discretion standard in reviewing this order. See *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011). We will reverse only if we determine that the district court's decision on this issue was arbitrary, fanciful, or unreasonable; or it was based on an error of law or fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018). We leave it to the district court to resolve the factual disputes, weigh the conflicting interests of the parties, and determine what arrangement is in the best interests of the children. See *In re Marriage of Bradley*, 258 Kan. at 45.

Here, the district court's order for residential placement of the children was neither arbitrary, fanciful, nor unreasonable. It was premised on the findings it made, which are supported by evidence in the record. In arriving at its findings, the district court considered all of the 18 statutory factors that were relevant to the issue before it. The district court did not base its decision on an error of law. While we fail to find evidentiary support or relevance for a few of the district court's findings, the remainder of the court's findings provide adequate support for its placement decision. Thus, we conclude that the district court did not abuse its discretion in denominating Lucyl the primary residential parent for the children.

Steven relies on *In re Marriage of Frakes*, No. 114,954, 2016 WL 4414021 (Kan. App. 2016) (unpublished opinion), to support a contrary outcome. We are not persuaded that *Frakes* advances Steven's cause. Steven apparently relies on *Frakes* because in that case the appellate court affirmed the district court's placement of minor children with their father rather than with their mother. But *Frakes* presents facts distinctly different

16

from those now before us. While dealing with different facts, the *Frakes* court reaffirmed the limitations upon appellate courts when reviewing child placement decisions—the same limitations we have adhered to in reviewing the decision on placement of the Dickson children. The *Frakes* court stated:

> "A district court's order granting or denying a modification to a child custody or residency order will not be disturbed in the absence of an abuse of discretion. A judicial action constitutes an abuse of discretion if it (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. An appellate court reviews the evidence in the light most favorable to the prevailing party to determine if the district court's factual findings are supported by substantial competent evidence and whether they support the court's legal conclusions. This court does not reweigh the evidence, pass on witness credibility, or redetermine questions of fact. [Citations omitted.]" 2016 WL 4414021, at *4.

Applying those standards, the *Frakes* court affirmed the district court's order regarding placement of the children.

*Steven's Parenting Time*

Steven contends that the district court abused its discretion in awarding him only 30 days of summer parenting time and holiday parenting time in alternating years. He argues that because the district court previously awarded him more parenting time as a part of its temporary orders, he should have been entitled to the same amount of parenting time as a part of the final order.

He also contends that the district court abused its discretion in failing to order that he be allowed parenting whenever he is in Kansas or at any other time agreed upon by the parties. He suggests that the district court's order drastically reducing his parenting time amounts to punishment for being in the military.

17

We just recited the standards used in *Frakes* for reviewing a child custody or residency order. Those same standards apply when the issue is the propriety of the district court's order regarding parenting time. See *In re Marriage of Kimbrell*, 34 Kan. App. 2d 413, 419, 119 P.3d 684 (2005); *In re Marriage of McNeely*, 15 Kan. App. 2d 762, 764, 815 P.2d 1125 (1991).

A nonresidential parent is entitled to reasonable parenting time. The only exception to this rule is when the exercise of parenting time would "seriously endanger the child's physical, mental, moral or emotional health." K.S.A. 2019 Supp. 23-3208(a). This exception does not apply here.

Steven is entitled to reasonable parenting time. In establishing what constitutes reasonable parenting time the district court must consider the child's best interests. K.S.A. 2019 Supp. 23-3201. In determining the child's best interests, the court considers the same factors found in K.S.A. 2019 Supp. 23-3203(a) that we discussed in connection with the district court's residential placement order. Here, in deciding Steven's parenting time the district court applied the same facts it found with respect to the statutory factors used to decide residential placement of the children.

Steven complains that the district court's order reduced the parenting time he had been provided in the district court's prior ex parte temporary order. But that order was ex parte—entered without a hearing or any input from Lucyl. Further, the order was a *temporary* order. Steven had no vested right that the temporary order ultimately would become the district court's final order.

Steven also complains that the district court's order did not provide for additional parenting time as agreed upon by the parties. First, the district court specifically provided for extended summer parenting time for Steven upon the agreement of the parties.

18

Second, the parties do not need an order of the court to agree on additional parenting time with their children, including those occasions when Steven is temporarily back in Kansas.

Steven complains about his reduced summer parenting time with the children. Given the circumstances of the parties and our standards of appellate review, the district court's final order afforded Steven reasonable summer parenting time with his children. He was given 30 continuous days in the summer. Given the increasingly shortened summer recess for school children these days, Steven's summer parenting time represents about one-half of his son's summer recess. Moreover, the district court specifically provided that he and Lucyl were free to agree on a longer period of summer visitation if they chose to do so.

Steven suggests without evidentiary support that by limiting his parenting time the district court was punishing him for being in the military. District courts across this state are faced almost daily with disputes over the parenting time of a party who has moved away from the jurisdiction. Our courts routinely wrestle with reconciling the best interests of a child with the right of an absent parent to have reasonable parenting time with the child. The resolution by the district court in our present case is entirely consistent with how district courts across the state deal with the issue. Steven is not being punished for being in the military. The district court's parenting time order is a reasonable way to reconcile Steven's right to parenting time with the logistics of exercising that right given the physical distance that separates him from his children.

We find no abuse of discretion in the district court's order for Steven's parenting time.

*Steven's Motion to Alter or Amend the District Court's Order for Residential Placement and Parenting Time*

Steven timely moved to alter or amend the district court's December 17, 2019, orders regarding residential placement of the children and his parenting time with them. Steven contends that the district court erred in summarily denying his motion after he had specifically requested a hearing on his motion.

Before addressing the merits of Steven's claim of error, we must address Lucyl's argument that we lack subject matter jurisdiction to review this issue because Steven did not expressly appeal the district court's summary denial of his motion to alter or amend. Jurisdiction to hear an appeal is conferred by statute. This issue turns on matters of statutory construction and, as noted earlier, is therefore an issue of law over which we have unlimited review. *Nauheim*, 309 Kan. at 149. An appellate court only obtains jurisdiction over the rulings identified in the notice of appeal. *In re Marriage of Galvin*, 32 Kan. App. 2d 410, Syl. ¶ 1, 83 P.3d 805 (2004). K.S.A. 2019 Supp. 60-2103(b) requires an appellant's notice of appeal to "designate the judgment or part thereof appealed from."

Steven's second notice of appeal—the one he filed on February 14, 2020, following the district court's denial of his motion to alter or amend—states:

> "Notice is hereby given that Petitioner Steven D. Dickson, II[,] appeals from all judgments, orders, and decisions entered by the District Court in this matter on December 17, 2019, and all previous rulings and orders on all related issues to the Court of Appeals of the State of Kansas."

Lucyl contends that this notice of appeal applies to the district court's December 17 orders establishing her as the primary residential parent and defining Steven's parenting

20

time with the children, along with "all previous rulings and orders on all related issues," but not to the district court's later ruling on Steven's motion to alter or amend.

K.S.A. 2019 Supp. 60-2103(b), which requires an appellant's notice of appeal to "designate the judgment or part thereof appealed from," is found in the Kansas Code of Civil Procedure. The provisions of the Code are to be liberally construed to "secure the just, speedy[,] and inexpensive determination of every action and proceeding." K.S.A. 2019 Supp. 60-102. Thus, these notice of appeal requirements should not be overly technical and burdensome. *In re Marriage of Galvin*, 32 Kan. App. 2d at 411.

Applying this provision in K.S.A. 2019 Supp. 60-2103(b) we can interpret the notice of appeal in two ways: "all previous rulings and orders" could mean (1) all rulings and orders preceding the December 17, 2019 order; or (2) all rulings and orders preceding February 14, 2020, the date the notice of appeal was filed.

Consistent with the approach the court used in *Galvin*, we conclude that a reasonable interpretation of Steven's notice of appeal is that he is appealing the district court's December 17 order and all other orders that predate the filing of this appeal. This includes the district court's summary denial of Steven's motion to alter or amend. Accordingly, we have jurisdiction to consider this issue.

Turning to Steven's claim, we review the summary denial of his motion to alter or amend for any abuse of judicial discretion. *Exploration Place, Inc. v. Midwest Drywall Co., Inc.*, 277 Kan. 898, 900, 89 P.3d 536 (2004). The district court abuses its discretion if its action is arbitrary, fanciful, unreasonable, or based on an error of law or fact. *Biglow*, 308 Kan. at 893.

Steven made a timely request under to Rule 133 for oral argument on his motion to alter or amend. Supreme Court Rule 133(c)(1) (2020 Kan. Ct. R. 200) provides:

21

"A party may request oral argument—either in the motion or in a response filed by the adverse party under subsection (b). The court *must grant* a timely request for oral argument *unless* it states in the ruling or by separate communication that oral argument would not aid the court materially." (Emphases added.)

Steven claims the district court committed an error of law in ruling on his motion without honoring his request for oral argument. But in the order denying Steven's motion to alter or amend, the district court specifically states:  "Pursuant to Supreme Court Rule 133(c)(1), the Court finds that there is no oral argument that will aid this court materially in reaching a decision on the Motion. Therefore, no hearing on the motion is needed."

The district court clearly complied with Rule 133(c)(1) by stating in the ruling that oral argument would not aid the court materially. The district court did not abuse its discretion in denying Steven's motion without a hearing.

Finally, the fact that the district court ruled before Lucyl had an opportunity to file her response to the motion—as Steven argues—does not affect our analysis. After all, the district court essentially ruled in Lucyl's favor in denying the motion to alter or amend.

Steven has failed to meet his burden of establishing that the district court abused its discretion in summarily denying his motion to alter or amend.

Affirmed.